HATHAWAY v. EAST TENNESSEE, V. & G. R. R.

(*Circuit Court, S. D. Georgia, W. D.*   October, 1886.)

1. NEGLIGENCE—QUESTION FOR JURY, WHEN.
     The question of negligence is for the jury when there is substantial doubt as to the facts, or as to the inferences to be drawn from them.
2. SAME—WHEN THE CASE WILL BE TAKEN FROM THE JURY.
     When, however, all the evidence offered to show negligence is assumed to be true, and no inference which tends to show a failure of duty could fairly be drawn therefrom, the court must instruct the jury that no negligence has been shown, and to find their verdict accordingly.
3. SAME—"SCINTILLA OF EVIDENCE."
     The doctrine of "*scintilla* of evidence" considered.
4. COURTS—FEDERAL—PRACTICE—NEGLIGENCE CASES—ORDERING VERDICTS.
     In the federal courts the judges are no longer required to submit a case to the jury merely because some evidence has been offered by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to find a verdict for the party adducing it.
5. TRIAL—ORDERING VERDICTS.
     The practice of giving peremptory instructions to the jury considered and defined.   "The practice is a wise one.   It saves time and costs.   It gives the certainty of applied science to the results of judicial investigation.   It draws clearly the line which separates the province of the judge and the jury, and fixes where it belongs the responsibility which should be assumed by the court."   Mr. Justice SWAYNE. 10 Wall. 604–637.
6. SAME—TRIAL JUDGE EXPRESSING OPINION ON THE FACTS—CODE GA. § 3248.
     Section 3248 of the Code of Georgia, prohibiting the trial judge from expressing any opinion upon the facts in evidence, is not regarded in the courts of the United States.   *Railway Co.* v. *Putnam,* 7 Sup. Ct. Rep. 1, (decided Sup. Ct. U. S. October, 1886.)
7. NEGLIGENCE—VERDICT ORDERED FOR DEFENDANT.
     Under the facts of this case the jury instructed to find for the defendant.
(*Syllabus by the Court.*)

Action on the case against a railroad company for damages.   Motion for direction of verdict.

*Lyon & Gresham,* for plaintiff.

*Bacon & Rutherford,* for defendant.

SPEER, J.   The question whether or not negligence existed is generally a question for the jury.   It has been held that the case should always go to the jury (1) when the facts which, if true, would constitute evidence of negligence, are controverted; (2) where such facts

are not controverted, but where there might be a fair difference whether the inference of negligence should be drawn; (3) when at the same time the facts are in dispute, and the inferences to be drawn from them are doubtful. In other words, the question of negligence is for the jury when there is substantial doubt as to the facts, or as to the inferences to be drawn from them. When, however, it is assumed that the evidence which is favorable to the plaintiff is true, and no fair inference that the defendant had been guilty of a failure of duty could be drawn from such evidence, the judge should, according to the practice of the court, decide the case by peremptory instructions to the jury.

In the courts of the state of Georgia it is held "that when there is any evidence, however slight, tending to support a material issue, the case must go to the jury, in deference to the theory that they are the exclusive judges of the weight of evidence," (*Mercier* v. *Mercier*, 43 Ga. 323; *Johnston* v. *Crawley*, 22 Ga. 348; *Stamper* v. *Hayes*, 25 Ga. 546; *Phillips* v. *Brigham*, 26 Ga. 617;) and a verdict based upon such a *scintilla* of evidence will not be disturbed, although the court trying the case is dissatisfied with the verdict, and is of the opinion it is against the weight of the evidence. This doctrine is not recognized in the courts of the United States.

In the case of the *Commissioners, etc.,* v. *Clark*, 94 U. S. 278–284, Mr. Justice CLIFFORD delivering the opinion, it is held the judges are no longer required to submit a case to the jury merely because some evidence has been offered by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party adducing such evidence. Decided cases may be found where it is held that, if there is a *scintilla* of evidence in support of a case, the judge is bound to leave it to the jury; but the modern decisions have established a more reasonable rule, to-wit, that, before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is literally *no* evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed.

Mr. Justice GRIER announced in *Parks* v. *Ross*, 11 How. 373, the following forcible propositions:

"Undoubtedly it is the peculiar province of the jury to find all matters of fact, and of the court to decide all questions of law. But a jury has no right to assume the truth of any material fact without some evidence legally sufficient to establish it. It is therefore error in the court to instruct the jury that they may find a material fact when there is no evidence from which it may be legally inferred. Hence the practice of granting an instruction like the present, which makes it imperative upon the jury to find a verdict for the defendant, and which has in many states superseded the ancient practice of a demurrer to the evidence. It answers the same purpose, and should be tested by the same rules. A demurrer to evidence admits, not only the facts stated therein, but also every conclusion which a jury might fairly or reasonably infer therefrom."

In *Hickman* v. *Jones*, 9 Wall. 197–201, it is declared by Mr. Justice SWAYNE that "when there is no evidence, or such a defect in it that the law will not permit a verdict for the plaintiff to be given, such an instruction to the jury may be properly demanded, and it is the duty of the court to give it, and error to refuse it." And in *Merchants' Bank* v. *State Bank*, 10 Wall. 604–637, it is, in the opinion of the supreme court of the United States, delivered by the same eminent jurist, held that, according to the settled practice of the courts of the United States, it is proper to give such instructions if it is clear that the plaintiff cannot recover. "The practice," he declares, "is a wise one. It saves time and costs. It gives the certainty of applied science to the results of judicial investigations. It draws clearly the line which separates the province of the judge and jury, and fixes where it belongs the responsibility which should be assumed by the court."

Chief Justice MARSHALL, in the early history of the great tribunal which has rendered so renowned the jurisprudence of America, in *Pawling* v. *U. S.*, 4 Cranch, 219, announced the same principle:

"The general doctrine [said he] on a demurrer to the evidence has been correctly stated at the bar. The party demurring admits the truth of the testimony to which he demurs, and also those conclusions of fact which a jury may fairly draw from that testimony. Forced and violent inferences he does not admit, but the testimony is to be taken most strongly against him; and such conclusions as a jury might justifiably draw the court ought to draw."

Mr. Justice MILLER, in *Pleasants* v. *Fant*, 22 Wall. 116, 121, 122, reiterates this rule:

"It is the duty of the court, in its relation to the jury, to protect parties from unjust verdicts arising from ignorance of the rules of law and of evidence, from impulse of passion or prejudice, or from any other violation of his lawful rights in the conduct of a trial. This is done by making plain to them the issues they are to try; by admitting only such evidence as is proper in these issues, and rejecting all else; by instructing them in the rules of law by which that evidence is to be examined and applied; and finally, when necessary, by setting aside a verdict which is unsupported by evidence or contrary to law. In the discharge of this duty it is the province of the court, either before or after the verdict, to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor, not whether on all the evidence the preponderating weight is in his favor,—that is the business of the jury,—but, conceding to all the evidence offered the greatest probative force which, according to the law of evidence, it is fairly entitled to, is it sufficient to justify the verdict? If it does not, then it is the duty of the court, after a verdict, to set aside, and grant a new trial. Must the court go through the idle ceremony, in such a case, of submitting to the jury the testimony on which plaintiff relies, when it is clear to the judicial mind that, if the jury should find a verdict in favor of plaintiff, that verdict would be set aside, and a new trial had? Such a proposition is absurd; and, accordingly, we hold the true principle to be that if the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury. In such case the party can submit to a nonsuit, and try his case again if he can strengthen it, except where the local law forbids a nonsuit at that

stage of the trial; or, if he has done his best, he must abide the judgment of the court, subject to a right of review, whether he has made such a case as ought to be submitted to the jury; such a case as a jury might justifiably find for him a verdict."

In view of these and other decisions, we must accept it as a settled rule, adjudged by the supreme court of the United States, that when the judge is clear of doubt that a verdict ought to be rendered either for the plaintiff or defendant, and that it would be his duty to set a contrary verdict aside, he ought to instruct the jury so to find. On the other hand, such a direction cannot properly be given to the jury, unless the evidence is such as to leave no room for doubt that it is the duty of the jury to find accordingly.

The doctrine in England is precisely equivalent, in every way, to the decisions of the supreme court of the United States. *Jewell* v. *Parr,* 13 C. B. 916; *Toomey* v. *London, B. & S. C. Ry. Co.,* 3 C. B. (N. S.) 150; *Wheelton* v. *Hardisty,* 8 El. & Bl. 262.

The ancient rule throwing everything to the jury if there is a *scintilla* of evidence is also advised by the courts of several states. In Maryland the court passes on the legal sufficiency of the evidence; in Missouri, on its legal effect. See, also, *Wittkowsky* v. *Wasson,* 71 N. C. 451; *Salomon* v. *Manhattan Ry. Co.,* (New York court of appeals,) Daily Reg. December 6, 1886; S. C. 9 N. E. Rep. 450.

It is unquestionably true that the statute of Georgia, (Code, 3248,) which has been very recently, in *Vicksburg & M. R. Co.* v. *Putnam,* 7 Sup. Ct. Rep. 1, decided to have no standing in the courts of the United States, has had and is now having a most damaging and injurious effect upon the administration of justice in the state courts. It is, perhaps, of all causes the most fruitful occasion for mistrials, improper verdicts, and new trials, and the consequent delay and failure of justice. The experienced and able judges who preside in the courts of the state, qualified to sift testimony, experts in the detection of fraud and falsehood, unprejudiced, are absolutely powerless to aid the jury to ascertain the truth, and to make a proper verdict. Thus the people are in a large measure deprived of the best results of the skill, training, and experience of their judges. The judge may lay down general instructions as to the law. Here he must stop. In the language of a gifted publicist of the day, Mr. Thompson, the author of the Law of Negligence:

"Such a system is scarcely more wise than it would be to select a lawyer, a doctor, a clergyman, a farmer, a merchant, a carpenter, a shoemaker, a blacksmith, a saloon keeper, a street-car driver, a capitalist, or a barber, constitute them a ship's crew, and start them out on a voyage in company with an experienced navigator, who is permitted to give them general instructions on the theory of navigation, but who is prohibited from giving them any positive order how to navigate the ship, and from correcting any blunders they may make in navigating it."

My own opinion is that the terrible burden borne by the supreme appellate court of the state is largely traceable to this injurious statute.

Now, to apply the doctrine settled by the decisions cited to the case in hand. The plaintiff was an employe of the defendant corporation, as flag-man. He was injured, while in the performance of his duty, in the following manner: The freight train was moving slowly from the station. The engineer told the plaintiff, who was on the track, that he was going to move out slowly, and to get aboard. The plaintiff replied: "All right; I will signal you to go ahead fast, as soon as I get on the cab." The plaintiff went down the side track until the cab was opposite to him. It was not really a cab, but a box car used in lieu of a cab. There was a ladder by the door, and an iron loop or step fastened to the car, under the door of the car, used as a cab. The plaintiff caught hold of the ladder with his hands, and attempted to get into the door. Before he made his step, as he testified, his feet struck a pile of sand. He lost hold of the ladder, and, falling on the pile of sand, rolled under the moving cars, and was injured as described. It was a dark night, with a "drizzly" rain. The plaintiff had a lantern on his arm. He stopped, to await the cab, near the pile of sand, and at that end in the direction from which the train was going. The sand, it was stated in the declaration, had been put there since he made "his last trip down the road." That, he testifies, was the day before the accident. The plaintiff's witnesses testified that there were one or two car-loads of sand in the pile; that it had been brought there to fill a depression or sink in the road-bed and between the tracks. The evidence is clear and undisputed that the pile of sand was only from one and a half to two feet high; that the construction train brought the sand to this spot, and the section hands were to see that it was properly distributed. There is no evidence to show that the sand was improperly placed. There is no satisfactory evidence as to when the sand was dumped at this spot. The plaintiff's witness said that there was a sink there that had to be filled.

The declaration avers that the sand was unnecessarily placed at this spot, and unnecessarily kept there; but there is literally no *scintilla* of evidence to support this statement. The plaintiff himself furnishes no such evidence by his testimony; and his witness, who spoke to this point, said there was a sink there that had to be filled. So far as the evidence informs the court and jury, the sand may have been placed at this spot after sunset the evening before. The testimony is that it had been placed there by the construction train, in the usual and ordinary way. It was thrown between the tracks, where it properly should have been thrown. Another witness for the plaintiff states he had not seen the sand until that night.

Now, there can be no reasonable inference of negligence from these facts. A court could not sustain a verdict finding negligence to exist in view of these facts. It is well known that the railroad company must distribute earth along its track. It is just as essential to its business and to the safety of its trains, as its cross-ties or its steel rails. It must be placed in position to be used; and the fact that it

was so placed cannot in itself, in the absence of other evidence, be sufficient to warrant the inference of negligence. It is, in this precise condition that the evidence leaves it. Under such circumstances it is the duty of the court peremptorily to instruct the jury that there can be no recovery, and that they must find for the defendant.

I need not, I trust, say that the unfortunate plaintiff has my sympathy as a man; but courts, in the determination of the rights of parties, are governed by the settled rules of law, not by the impulses of the heart.

NOTE BY THE COURT. I am largely indebted for the authorities cited in this decision to the excellent work, "Charging the Jury," contributed to the profession by Mr. Seymour D. Thompson.