[No. 3535.   Decided August 25, 1900.]

ANDREW KNOX, *as Receiver, Respondent,* v. W. P. FUL-
LER *et al., Appellants.*

SALES—DELIVERY—WHEN TITLE VESTS IN PURCHASER.

Where a contract is to sell 'for cash on delivery, and
delivery of the goods ·is made unconditionally, without fraud
or mistake, the title of the goods becomes vested in the pur-
chaser, notwithstanding the cash has not in fact been paid.

SAME—STOPPAGE IN TRANSITU—CESSATION OF RIGHT.

Where the seller of goods consigned them to the pur-
chaser, shipping them by boat under the ordinary shipping
receipt, and the goods were taken in charge at their destina-
tion by a wharfinger, who was independent of both the car-
rier and the purchaser, and who delivered the key of his ware-
house to the foreman of the purchaser with instructions to take
goods, indiscriminately from the entire shipment, whenever he
might desire to use them, the goods were thereby delivered
into the actual possession of the purchaser  to such an extent
as to end the seller's right of stoppage *in transitu,* although the
freight and storage charges on the goods had not been paid
and only a small portion of the goods had been removed by the
purchaser from the warehouse.

TRIAL—TAKING   CASE   FROM   JURY—APPEAL—OBJECTIONS   NOT
RAISED BELOW.

Where defendant on the trial challenged the legal suf-
ficiency of the evidence, on the ground that there was no ques-
tion to go to the jury, and the court agreed with defendant
that it was its duty to decide, as a matter of law, the effect of
the evidence, but in so deciding directed a verdict for plaintiff,
defendant cannot on appeal urge the objection that there was
a question of fact for the jury involved in the evidence, and
that it was error for the court to decide the case as a question
of law only.

MISCONDUCT OF JUDGE—COMMENT ON FACTS.

The action of the court in taking the examination of a
witness out of the hands of the attorneys, with the remarks
that "you gentlemen have been at this thing around here ·of
market value long enough.   I am going to ask the question
which I think he ought to answer," and that "this court and

jury have got something to do besides sitting here and have counsel beat around the bush," is such a comment as to constitute error.

Appeal from Superior Court, King County.—Hon. WILLIAM HICKMAN MOORE, Judge. Affirmed.

*Kerr & McCord* and *Everett C. Ellis*, for appellant:

There must be an actual delivery to the vendee or his agent, in order to prevent the vendor's right of stoppage from attaching. *Calahan v. Babcock*, 8 Am. Rep. 63; *Symns v. Schotten*, 35 Kan. 310; *United States Engine Co. v. Oliver*, 16 Neb. 614; *Walsh v. Blakely*, 6 Mont. 194; *Reynolds v. Boston & Maine Railroad*, 43 N. H. 580; *Mohr v. Boston & Albany R. R. Co.*, 106 Mass. 70. On the question whether the transit had ended there was some conflict of testimony, it is true. This question should most certainly have been submitted to the jury. *Rogers v. Schneider*, 41 N. E. 71; *Clapp v. Peck*, 55 Iowa, 270; *Farrell v. Richmond & D. R. R. Co.*, 102 N. C. 390 (11 Am. St. Rep. 760, 3 L. R. A. 647); *Signa Iron Co. v. Greene*, 88 Fed. 210. Where goods are consigned and shipped in the ordinary way, and the railroad company which brings them to the point of delivery, in performance of its duty as carrier, unloads and places the goods in its warehouse awaiting the payment of freight charges before delivery to vendee, the presumption will be that the goods are still in transit, and that the right of stoppage still remains in the vendor. *Symns v. Schotten*, 10 Pac. 831; *Harding Paper Co. v. Allen*, 65 Wis. 576; *Jeffris v. Fitchburg R. R. Co.*, 67 N. W. 427 (33 L. R. A. 351, 57 Am. St. Rep. 919); *Ex parte Barrow*, 6 Ch. Div. 783; *Ex parte Falk*, 14 Ch. Div. 446. In *Ex parte Cooper*, 11 Ch. Div. 68, part of the freight charges had been paid and part of the goods delivered, but the court held that while the carrier would be com-

pelled to deliver up to the extent of the freight which had been paid, unless ordered to the contrary, yet it could not be supposed that he intended to abandon his lien for the unpaid freight, and therefore a delivery of part did not operate as a constructive delivery of the whole. To the same effect are *Coventry v. Gladstone,* L. R. 6 Eq. 44; *Reynolds v. Boston & Maine Railroad,* 43 N. H. 590.

To constitute a waiver of the condition of "cash on delivery," there must be not only an act of delivery, but an intent not to insist on immediate payment as a condition of the title passing. *Globe Milling Co. v. Minneapolis Elevator Co.,* 44 Minn. 153; *State v. Green Tree Brewery Co.,* 32 Mo. App. 276.

*Wilmon Tucker* and *Ivan L. Hyland,* for respondent:

The right of stoppage *in transitu* exists until the goods are delivered to the buyer, or possession, actual or constructive, is taken by him. *Hall v. Dimond,* 3 Atl. 423. The right of stoppage *in transitu* ceases after the goods have reached their destination and are stored by the carrier in its warehouse as agent of the consignee. *Clapp v. Peck,* 7 N. W. 587; *Langstaff v. Stix,* 1 South. 97; *Millard v. Webster,* 8 Atl. 470; *Sawyer v. Joslin,* 20 Vt. 172 (49 Am. Dec. 768). A delivery of the key of the warehouse in which goods are deposited is sufficient delivery of the goods to transfer the property. *Wilkes v. Ferris,* 5 Johns. 335 (4 Am. Dec. 364); *Packard v. Dunsmore,* 11 Cush. 282; *Schurtz v. Romer,* 23 Pac. 118; *Gray v. Davis,* 10 N. Y. 285.

Where a party upon a trial rests his case upon certain positions which he calls upon the court to rule in his favor as questions of law, arising upon undisputed facts, if he also desires that any question of fact in the case be submitted to the jury, he must specify it, and ask that it be so submitted. In the absence of this, his mere

exception to the ruling of the judge that there is no question for the jury is unavailable. *Stone v. Flower,* 47 N. Y. 568; *Dounce v. Dow,* 64 N. Y. 411; *Muller v. McKesson,* 73 N. Y. 198 (29 Am. Rep. 123); *Ormes v. Dauchy,* 82 N. Y. 443 (37 Am. Rep. 583); *Dillon v. Cockcroft,* 90 N. Y. 649; *Stratford v. Jones,* 97 N. Y. 589; *O'Neill v. James,* 43 N. Y. 84.

The opinion of the court was delivered by

WHITE, J.—The respondent, Andrew Knox, is the receiver of the Friday Canning Company, a corporation existing under the laws of the state of Washington, and was appointed such receiver on the 27th day of August, 1898, by the superior court of Snohomish county, in an action wherein John Walsh was plaintiff and the said Friday Canning Company was defendant. The principal place of business of the Friday Canning Company, prior to the appointment of the receiver, was Stanwood, Snohomish county, Washington; and the business of said Company was controlled and managed by Frank P. Friday, its president and general manager. Some time in the latter part of July or the first of August, 1898, the Friday Canning Company became insolvent and was wholly unable to pay its debts; hence the action instituted in Snohomish county and the appointment of the receiver therein.

About the 15th day of July, 1898, the appellant sold to the Friday Canning Company certain goods, wares and merchandise, consisting of lacquer, turpentine, and lacquer shading, aggregating in all the sum of $203.98. The sale was made under the following circumstances: Early in the month of July, 1898, Mr. Friday went to the place of business of the appellant, in the city of Seattle, and stated that he would require some lacquer and turpentine, to be used at his cannery at Stanwood, and made

inquiries as to the price, and placed a verbal order for five barrels of lacquer and ten cases of turpentine. At the time, he stated it would be about two weeks before he would want the goods, and that he would advise the appellant when to ship. Appellant told Mr. Friday that it would sell him the goods, stating the price, *to be paid for on delivery in cash.* Two weeks after that, Mr. Friday personally ordered the goods to be forwarded. The goods were shipped on the 15th of July, 1898. Mr. Friday stated, either at the time the order was placed or when he ordered the goods to be forwarded, that he had $4,000 in the bank to pay for his supplies, and that the goods would be paid for when delivered. When the goods were ordered to be forwarded, Mr. Friday wanted the appellant to make up a bill for the goods. The appellant told him it could not do it then until it found out the number of gallons. A bill of the goods was sent to Mr. Friday, for him to send a check covering the price. The appellant knew nothing about the financial condition of the Friday Canning Company at the time of forwarding the goods, only as represented by Mr. Friday, and he stated that they had $4,000 cash in the bank to conduct their business. The goods were sent to Stanwood by boat. The shipping receipts were the ordinary receipts, such as boats usually use. No instructions were given to the carrier about receiving payment for the goods before delivering them to the canning company or to Mr. Friday. The goods were billed in the name of Mr. Friday. When they reached Stanwood they were placed in the steamboat warehouse, in the charge of a wharfinger independent of the carrier and the canning company. The freight was not paid. No demand was made for the freight as a condition of their delivery to the canning company. There were five barrels of lacquer and thirteen packages of lacquer shading and turpentine. The

canning company's establishment was about two hundred and fifty feet from the warehouse. The wharfinger gave to the foreman of the canning company a key to the warehouse, to get the goods when he might want them and as he chose, and he took just what he wanted, and as he could handle them. The foreman did not remove all of the goods from the warehouse, because the material was inflammable and he had no room in the cannery proper for the goods. He did, however, between the 2d and 4th of August, 1898, remove one barrel of lacquer and seven packages of turpentine and lacquer shading, and mixed a portion up, to be used in the cannery. No storage was paid to the wharfinger. The wharfinger permitted the goods to be taken out without the freight being paid on them, and no claim was made for the freight at that time, and that was a custom of almost daily occurrence as to all goods; and the wharfinger stated he could not say whether he would let any more go, or not, than those taken by the foreman, without the freight being paid, but that he would not have permitted the removal of a considerable portion without the payment of the freight. The foreman was asked:

"What kind of an understanding did you have with him [the wharfinger] about you taking goods out? Ans. Well, he doesn't stay at the wharf, you know, all the while; and he has other business, and so that I wouldn't have to be running after him, or he running after me, I told him I would take them as I wanted them. He says, 'All right, here is a key; go down and get them as you want them.'"

The wharfinger had never received any instructions to retain the goods until the purchase price was paid, or until the freight was paid. It may be fairly presumed from the evidence that the statements of Mr. Friday touching ability to pay for the goods on delivery, and as

to money on deposit in the bank for that purpose, were untrue. On or about August 18, 1898, the Friday Canning Company ceased operations, and about that time Mr. Friday informed the foreman that they were unable to pay their bills. The foreman left, and subsequently instituted the proceedings which resulted in the appointment of the receiver. On the 23d or 24th of August, 1898, the appellant sent its agent to Stanwood with instruction to get the cash for the goods or the goods. When he arrived there, Mr. Friday told him they were insolvent; and, Mr. Friday consenting, the agent of appellant took the goods that remained in the warehouse and the goods that were at the cannery, and the mixture from the goods, paid or assumed to pay the wharfinger the freight, wharfage and storage charges, and re-shipped the goods back to the appellant. The appellant then credited the Friday Canning Company with them on its books. The testimony of the appellant, as well as the testimony of the respondent, fully sustains the verdict of the jury that the value of the goods when they were taken by the appellant was $165.

This action was brought by the respondent to recover from W. P. Fuller & Co. the value of the property taken away from the canning company after it became insolvent, upon the theory that all of the property of the Friday Canning Company, upon its becoming insolvent, became a trust fund in the hands of its officers for the benefit of all its creditors. To the complaint appellant put in several defenses: That, after the shipment of said goods, appellant learned of the insolvency of respondent, and retook said goods while still in the warehouse of the common carrier; that respondent had agreed to pay for the goods so sold to it by appellant in cash on delivery, and that respondent did not pay as agreed; that at the time of the purchase of these goods the Friday

Canning Company was insolvent; that its insolvency was known to its officers and agents, and unknown to appellant, and that said contract was made, and said goods obtained, with the intention on the part of the Friday Canning Company to defraud appellant, and not to pay it therefor. Appellant also alleged that a few packages of the goods shipped the Friday Canning Company had been removed from the warehouse of the common carrier without its knowledge or consent, and fraudulently, without the payment of freight or payment to appellant. To this answer a general denial was interposed by the plaintiff, and upon the issues thus formed the trial was had. No motion for a non-suit was made at the time of trial, but, after all the evidence was in, counsel for the defendant challenged the legal sufficiency of all the evidence, and upon *one ground alone* asked that the court direct a verdict for the defendant.

The sole ground of the motion for peremptory instruction was that the title to the goods sold by the defendant to the Friday Canning Company had never passed to the Friday Canning Company. under what its counsel assumed to be a conditional sale contract. After hearing the argument on this motion, the court was of the opinion that a verdict should be directed, but that it should be against the defendant, with the right, however, to the defendant to have the amount of the verdict to be rendered fixed by the jury. Under appropriate instructions to that end, the jury retired to consider their verdict, and subsequently returned a verdict in favor of the plaintiff for the sum of $165. From the judgment entered thereon, proper exceptions having been saved, this appeal is prosecuted.

The allegation of the answer as to the sale is that the appellant sold the goods to be paid for in cash on delivery at Stanwood.. The proof is that the goods were sold to be

paid for on delivery in cash. Nothing was said about delivery at Stanwood. There is no allegation in the answer as to the representations touching the ability and funds on deposit to pay bills, or touching the $4,000 on deposit in the bank. The representations were not an integral part of the contract, and proof concerning them was immaterial, because the goods were to be paid for on delivery. Had these representations been made as means to secure possession of the goods, a different question would arise, under proper pleadings. From the fact that credit was given to the Friday Canning Company for the value of the goods returned, on the return of the goods, it would seem that they were charged to the canning company when they were shipped. When the goods were shipped, and at no time thereafter, was there a reservation by the appellant of title to the property until the purchase money should be paid. It was more than a month after the shipment before any demand, and such demand was not made until appellant knew that the Friday Canning Company was insolvent. It is clear from the evidence that appellant not only intended to deliver possession of these goods, but to pass the title without any reservation. We think the law is well settled that, where the contract is to sell for cash on delivery, and the seller makes an unconditional delivery without receiving the cash, he waives the condition of cash payment and the title passes to the purchaser. There was no fraud or mistake as to the delivery. Says the supreme court of Maryland, "Although the sale was *for cash,* yet if the delivery of the goods was made unconditionally and without fraud or mistake, the title to the goods thereby became vested in the vendees. notwithstanding the cash was not in fact paid." *Foley v. Mason.* 6 Md. 49; *Henderson v. Lauck,* 21 Pa. St. 359; *Thompson v. Wedge,* 50 Wis. 642 (7 N. W. 560); *Singer Mfg. Co. v. Sammons,*

49 Wis. 319 (5 N. W. 788). The crucial question is, was there an actual delivery of the goods to the canning company? We think there was. While it is true that the freight was not paid, notwithstanding this fact absolute dominion and control passed from the wharfinger to the canning company. They were given an independent key to the warehouse, and took the goods, as they desired to use them, indiscriminately from the entire shipment. It was held in the case of *Buckley v. Furniss,* 15 Wend. 137, cited by the appellant, that a delivery of goods to the carrier was a delivery to the purchaser, and that while they were being transmitted to the purchaser, and before actual possession by the purchaser, the right of stoppage *in transitu* existed, but that when they came into the *actual possession* of the purchaser, or are placed under circumstances equivalent to actual possession, that right was at end. The goods in this case, after the key of the warehouse was given to the foreman, with the privilege of taking the goods as he might desire them, and he exercised that right, passed into the actual custody of the purchaser; and from that on the purchaser was liable for the storage charges, and, no doubt, could have sued the warehouseman for their loss. The case of *Buckley v. Furniss, supra,* sustains this view. There was nothing in the testimony of the wharfinger in any way contradicting the testimony of the foreman. His testimony, as far as it goes, is corroborative of the foreman's testimony. We hold that under the special circumstances of this case, the possession of the wharfinger after he gave the key to the foreman of the purchaser, was the possession of the vendee. In such a case, all the cases cited by the appellant hold that the right of stoppage does not exist.

When the evidence was all in, counsel for the appellant was of the opinion that on the question of the sale and de-

livery there was no question to go to the jury. In stating his motion, he says:

"Mr. Seymour goes upon the witness-stand and states what the contract of sale between Mr. Friday, or the Friday Canning Company, and Fuller & Company was. Now, what is it? He says they were sold to be paid for in cash upon delivery. I contend, your honor, that goods sold, to be paid for upon delivery, as a matter of law, means that the title does not pass until the goods have been paid for; in other words, that delivery and payment go hand in hand. You cannot have the one completed without the other; and the authorities, I think, bear me out on that proposition. Now, the reason that I ask for an instructed verdict at this time, upon that theory of the case, is that nobody has contradicted Mr. Seymour—nobody has attempted to contradict him. His testimony stands alone before the court, and there is nothing for the jury to determine. The court is compelled to instruct the jury, that, if these goods were sold for cash on delivery, we are entitled to a verdict, because we took the identical goods that we had conditionally parted with. We sent the agent and representative of W. P. Fuller & Company to Stanwood. He takes the very goods that we had parted with, and which the testimony shows were never paid for, only in part. I don't care whether there was a completed delivery, or whether there was not. Now, under the testimony in this case, if I am right upon that proposition of law, the mere fact of goods sold to be paid for upon delivery is conclusive and binding upon this court."

The court below entertained the same view of the law that we entertain and ruled that the sale was a completed one; that the only question for the jury was the value of the goods taken by the appellant, and submitted that question alone to the jury. The court acted correctly. The legal sufficiency of the evidence was challenged by this motion, and it was the duty of the court to decide, as a matter of law, its effect. In *Grigsby v. Western*

*Union Tel. Co.,* 5 S. Dak. 561 (59 N. W. 734), the court says:

"It moved the court to direct a verdict in its favor. This was a concession that there was no question in the case but one of law, which it was the duty of the court to decide. The court adopted the very theory which appellant asked it to adopt, and took this case from the jury. That it decided the law question adversely to it, ought not to put appellant in a position to now assert, as against the ground and theory of his motion, and without any request to have the case submitted to the jury, that there was a question of fact for the jury, and that it was error for the court to grant its motion, and decide the case as a question of law only."

*Barnes v. Perine,* 12 N. Y. 18; *Winchell v. Hicks,* 18 N. Y. 565; *Leggett v. Hyde,* 58 N. Y. 275 (17 Am. Rep. 244); *Northam v. International Ins. Co.,* 61 N. Y. Supp. 45; *Ranken v. Donovan,* 61 N. Y. Supp. 542; *Schreyer v. Jordan,* 61 N. Y. Supp. 889.

In the case of *Merchants' Bank v. State Bank,* 10 Wall. 637, Justice SWAYNE says:

"The practice is a wise one. It saves time and costs; it gives the certainty of applied science to the results of judicial investigation; it draws clearly the line which separates the provinces of the judge and jury, and fixes where it belongs the responsibility which should be assumed by the court."

*Baltimore & O. S. W. Ry. Co. v. Conoyer,* 149 Ind. 524 (48 N. E. 352); *Krautman v. Friedman,* 57 N. Y. Supp. 84; *Hathaway v. East Tennessee V. & G. R. R.,* 29 Fed. 491.

It is claimed that the court erred in compelling the counsel for appellant to drop the examination of the witness Seymour on the question of market value, and in using the language he did in the presence of the jury. On the re-direct examination of Mr. Seymour, a witness for the appellant, the following took place:

"Q.   Mr. Seymour, the court asked you, just now, what was the value of that blended lacquer at the cannery; I will ask you what was the market value of the blended lacquer at the cannery in Stanwood at that time?

Mr. Tucker:  Up there at the cannery, to a cannery?

Mr. McCord:   No, sir; what was the market value of it in Stanwood, at the cannery, at that time?

Mr. Tucker:  Object, as not proper question, and it is not a question, in this instance, as to what the market value was, etc.

A.   It was worth that amount of money if it could be used—a person had use for it.

Q.   Was there any market value for it at the cannery at that time?

A.   There would be no market value for it.

Mr. Tucker:  We still object, your honor.

Q.   Did it have a value to anybody in the open market, engaged in the canning business at that point, or at other points?

Mr. Tucker:  I object—

The Court:  If it had in the open market to persons engaged in canning at that point or other points.

Mr. Tucker:  As modified by the court, I have no objection.

Q.   Was there any sale for it?

The Court:  What that lacquer, mixed as it was, would bring if it was owned by a party who was willing to sell it, but was not under obligation to sell it, if it was purchased by one who wanted it, but didn't have to have it—what would it bring in cash?

Mr. McCord:   Object to the question as incompetent, irrelevant and immaterial, and not properly stated.

The Court:  That is, if you know?

A.   It would be worth 35 cents a gallon to a canner, if you could find a purchaser for it.

The Court:  My question is this—I want to get through with this question of market value:  What would it bring in cash if it were bought by a man who wanted it, but didn't have to have it, and were sold by a man who was willing to sell it, but didn't have to sell it—now what would it bring in cash?

Mr. McCord:  I still renew my objection to the question.

A.  I don't think you could dispose of it in that condition.

The Court:  You think if a man owned it, wanted to sell it, but didn't have to sell it, and there was a man that wanted to buy it, but didn't have to buy it, that it would have no cash value?

Mr. McCord:  I object to the question.

The Court:  You gentlemen have been at this thing around here of market value long enough.  I am going to ask the question which I think he ought to answer.

Mr. McCord:  I simply want to note an objection to the court's inquiry that your honor has already put.  I object because the question is leading, incompetent, and immaterial, and the witness has already shown that that kind of material has no market value, and it cannot be sold; no cannery has ever bought it.

The Court:  Can you answer that question?

A.  I cannot.

The Court:  We will pass from that subject, if you want to ask this witness any more questions.  This Court and jury have got something to do besides sitting here and have counsel beat around the bush.  You may have an exception to that remark—both exceptions.

Mr. McCord:  That is all.

Mr. Tucker:  That is all."

It was improper for the court to take the examination of the witness out of the hands of the attorneys in the manner it did, and to indulge in the remarks about counsel beating around the bush.  There is nothing in the records showing that the character of the examination indulged in by the court was necessary, and certainly the remarks were highly improper.  Ordinarily such an examination by the court would have its influence on the minds of the jury, prejudicial to the party calling the witness.  This court in the case of *State v. Crotts,* 22 Wash. 245 (60 Pac. 404) has condemned this practice.  The injury in this case was not prejudicial, however.  The

witness had answered in his direct examination that the mixture was worth 35 cents per gallon at the cannery when taken, and this is about the value the jury must have put upon it in arriving at their verdict. The entire cost of the goods when they were delivered was $203.98. There was no showing that they had depreciated in value. The verdict of the jury was for $165. Mr. Seymour was an intelligent and not an unwilling witness, and was the person who sold the goods in the first instance, and certainly knew their value; and, when he answered on cross-examination, that the mixture was worth 35 cents per gallon at the cannery, he meant just what he said.

We think the judgment of the lower court should be affirmed, and it is so ordered, with costs to respondent on this appeal.

DUNBAR, C. J., and ANDERS, REAVIS and FULLERTON, JJ. concur.