[No. 14405.  Department Two.  April 25, 1918.]

MARK J. SEVIER, *Appellant,* v. G. W. HOPKINS,
*Respondent.*[1]

TRIAL—MOTION FOR DIRECTED VERDICT—WAIVER.  Where both parties ask for a directed verdict and reserve no question of fact to be submitted to the jury, they admit that the evidence is free from conflict and waive the verdict of the jury.

SALES—WARRANTY—BREACH—MEASURE OF DAMAGES.  Where hay to be chopped was sold under a warranty of first-class condition and the vendor caused wet hay and snow to be chopped and mixed with the good hay, whereby all was spoiled, the buyer, who had no notice of the fraud until after full payment, can recover his entire damage.

PRINCIPAL AND AGENT—DRAYMAN—SALES—ACCEPTANCE OF GOODS.  A drayman, employed by telegraph by the buyer to haul hay and load it into cars, is not the agent of the buyer with authority to bind the buyer by the acceptance of hay that did not comply with the contract of purchase.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered March 31, 1917, in favor of the defendant, upon withdrawing the case from the jury, dismissing an action for damages.  Reversed.

*Snively & Bounds,* for appellant.

*D. H. Bonsted,* for respondent.

HOLCOMB, J.—This action was brought by the appellant, Mark J. Sevier, against the respondent, G. W. Hopkins, for damages of $437.  The controversy arose out of a verbal contract for the sale of hay, and the facts are as follows:

In the latter part of February, 1915, the parties met in Toppenish, Washington, and respondent verbally offered to sell to the appellant some sixty-five to seventy tons of first-class alfalfa hay at $6.50 per ton, and $1.25 per ton additional for chopping the hay.

'Reported in 172 Pac. 550.

The hay was in stacks on the Britton place, about one-half mile from Toppenish. It was to be weighed on the Farmers' Union scales at Toppenish, and was to be hauled away from the chopper by appellant. On the day of this offer, the appellant went to Portland, Oregon, and told respondent that he would wire him if he would take the hay. On the next day appellant wired from Portland, "I will take the hay; have it chopped fine at once." The respondent had the hay chopped by one Hake, who then had his machine on the Britton place. Hake started to work and commenced stripping the hay by removing the snow and wet hay on the outside of the stack, whereupon respondent's son and foreman appeared and directed Hake not to strip the hay, but to cut it all and mix the wet hay and snow with the rest of the hay. Appellant wired one Bratton to haul the hay, who got Johnson Brothers, draymen, to haul it and load it into cars, to be shipped to Portland, Oregon. Appellant inspected the hay for the first time when it arrived in cars at Portland, and found that it had been heated or burnt, and that steam and water drops were in the car as though it had rained on the cars and leaked through. Appellant thereupon made a claim against the railroad company for damages. Thereafter he paid the respondent $437, the price of the hay at $6.50 per ton. The appellant learned that the railroad company removed the cars to Albany, Oregon, for inspection, and claimed that the railroad company was not at fault as at first contended. Appellant then went to Toppenish and investigated the matter there, and found that the wet hay and snow had been mixed while the hay was being chopped, upon orders of the respondent's son and foreman.

Appellant brought his action upon the theory that respondent had misrepresented the hay and that a

fraud had been practiced on him by mixing the wet hay and snow in with the rest of the hay, which fraud appellant had not discovered until after payment of the $437. The evidence in the record shows that the hay was a total loss to appellant, and this is not disputed by respondent.

At the conclusion of the trial, the respective parties moved for a directed verdict. The court denied plaintiff's motion, took the case from the jury, and dismissed the action.

The trial court was of the opinion that the contract was a severable one and that the plaintiff tried it on that theory. The record does not show it, and the plaintiff claims otherwise in his brief.

Appellant assigns as error failure of the court to direct a verdict for the plaintiff at the conclusion of all the testimony. The evidence shows that the hay was to be in first-class condition, finely cut, and that the appellant never saw the hay until it reached Portland, from where his order of acceptance was sent by telegram before the hay was chopped and shipped. Respondent was in entire charge of the hay until after chopping. If all the hay had been in first-class condition before chopping, or if the wet hay and snow had been separated from the good hay, the condition of which the respondent had knowledge, the hay would not have spoiled in transit.

"It is generally held in this country that the intentional nondisclosure of a latent defect by the seller, when he knows that it is unknown to the buyer, is fraudulent." 35 Cyc. 69.

"Any device, however, used by the seller to conceal defects or to induce the buyer to omit inquiry or examination is as much a fraud as active concealment." 35 Cyc. 69.

"According to the weight of authority the buyer cannot, in the absence of fraud or an agreement giving

him the right, rescind an executed contract of sale for a breach of warranty, his remedy in such case being on the warranty. The breach of warranty neither rescinds the sale nor gives the vendee a right to rescind, but merely a right of action for damages.'' 35 Cyc. 138.

It seems that there is some question as to whether the contract herein is severable. The decision of this point is unnecessary, as the appellant is not asking for a rescission but has brought his action for damages caused by respondent's misrepresentation and fraud.

This brings us to the point whether the appellant's evidence will sustain a judgment. Both parties having asked for a directed verdict and reserving no question of fact to be submitted to the jury, they admitted that the evidence was free from conflict. *Lindquist v. Northwestern Port Huron Co.*, 22 S. D. 298, 117 N. W. 365; *Knox v. Fuller*, 23 Wash. 34, 62 Pac. 131.

The *Knox* case was followed in the case of *Easterly v. Mills*, 54 Wash. 356, 103 Pac. 475, 28 L. R. A. (N. S.) 952, where the court said:

''When the two motions were interposed, there being no conflict in the evidence as to any material fact, the parties in effect waived a verdict of the jury, and submitted the cause for determination by the trial judge, who was then authorized to enter such judgment as the evidence warranted, and we will on this appeal dispose of the case on the same theory.''

We cannot sustain the contention of respondent that the draymen had authority to accept, and did accept, delivery of the wet hay and snow as agent of appellant, thus constituting acceptance of the hay as delivered, by the purchaser. The authority of the draymen was simply to cart the hay turned over to them by the respondent to the cars. No one had been given such authority by appellant to act as his agent either to

accept or refuse the hay, no matter what its condition when delivered.

A wrong was committed in this case by the respondent's attempting to palm off upon appellant the wet unmerchantable hay, thus causing the whole lot to spoil, to appellant's damage. As to who committed this wrong, appellant had no knowledge until after payment and acceptance of the hay. To allow respondent to profit by his wrong would be unjust and unconscionable. The appellant was overreached and defrauded and is entitled to recover his entire damage therefor. This is indisputably shown to be the sum of $437.

Reversed and remanded with instructions to enter judgment for appellant for the sum of $437, with his costs and legal interest from date of trial.

ELLIS, C. J., FULLERTON, MOUNT, and CHADWICK, JJ., concur.