[No. 15563. Department One. December 22, 1919.]

ROBERT J. McCLURE, *Appellant,* v. CHARLES A. WILSON *et al., Respondents.*[1]

TRIAL (64)—DIRECTION OF VERDICT—OPERATION AND EFFECT OF MOTION. There is no waiver of a jury trial, or conclusive submission of the merits of the case to the judge, where both parties moved for a directed verdict, and both motions were overruled and the case, which was purely a law case, was submitted to the jury; and the jury's verdict is as binding upon the court and parties as in any other case.

MUNICIPAL CORPORATIONS (390, 391)—USE OF STREETS—AUTOMOBILES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY. In an action for personal injuries, sustained by a pedestrian when struck by defendant's automobile at a city street intersection, neither the negligence of the defendant nor plaintiff's contributory negligence can be determined as a matter of law, where it appears that plaintiff, after leaving a street car, hurried back across the street to pay the conductor his fare and while in plain view of the defendant, started back to re-cross the street in front of the defendant's automobile which he had last seen about one block away, and defendant drove across the city street intersection without reducing his speed below fifteen miles per hour; as the questions were for the jury.

[1]Reported in 186 Pac. 302.

Appeal from a judgment of the superior court for King county, Frater, J., entered April 22, 1919, in favor of the defendants, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Reversed.

*Paul Shaffrath* and *Arthur C. Dresbach,* for appellant.

*Morris B. Sachs* and *W. R. Crawford,* for respondents.

PARKER, J.—The plaintiff, McClure, commenced this action in the superior court for King county, seeking recovery of damages which he claims to have suffered as a result of the negligent operation of an automobile by the defendant Wilson while driving the same as agent for the defendant Matheny, the owner thereof. A trial upon the merits in the superior court sitting with a jury, resulted in a verdict awarding the plaintiff recovery in the sum of $2,780. Thereafter the court rendered in favor of the defendants a judgment notwithstanding the verdict, upon motion timely made in that behalf by their counsel. From this disposition of the cause, the plaintiff has appealed to this court.

The main question here to be decided is whether or not the trial court erred in refusing to render judgment in favor of appellant in accordance with the verdict, and in rendering the judgment against him notwithstanding the verdict. In view of the contention made by counsel for respondents that the condition of the record is such as to call for the conclusion that the trial court rendered its decision upon the questions of both law and fact, and that it was warranted in so doing as if the case had been tried before the court without a jury, it seems necessary that we first determine the viewpoint the trial judge was re-

quired or permitted to assume in rendering his decision upon the motion for judgment notwithstanding the verdict; that is, whether he was required to dispose of that motion as in any other ordinary jury case where a verdict is rendered, or whether he was, because of prior motions by counsel for the respective parties and the peculiar circumstances of the trial, authorized to dispose of the motion as if he were then deciding the case upon the merits upon questions of both law and fact. If the judge was required to dispose of the motion for judgment notwithstanding the verdict purely as such, having in mind that the verdict of the jury would be controlling unless wrong, as a matter of law, it is plain we must test the correctness of his decision by determining whether or not there is evidence to support the verdict; while if the judge was, by reason of prior motions made by counsel for both parties and the peculiar circumstances of the trial, authorized to dispose of the motion as if he were deciding the case upon the merits as to questions of fact as well as law, it is equally plain we must test the correctness of his decision by determining whether or not the weight of the evidence preponderates against it.

The facts determinative of the correctness of the decision upon this preliminary question may be summarized as follows: At the conclusion of the introduction of all of the evidence upon the trial, both sides having rested, a motion was made in behalf of respondents for an instructed verdict in their favor, rested upon the ground, in substance, that the evidence would not support any finding of negligence on the part of respondents; that appellant's injuries were conclusively proven to be the result of his own contributory negligence; and that, therefore, it should be so decided as a matter of law. This motion was

immediately heard and denied. Immediately thereafter a' motion was made in behalf of appellant, as follows: "We ask at this time also for an instructed verdict for the plaintiff, for the reason and upon the ground that the evidence distinctly shows by Mr. Wilson himself that he deliberately, wilfully ran this man down." This motion was also immediately heard and denied. Thereupon the trial judge instructed the jury, submitting to it the question of respondents' negligence and of appellant's contributory negligence, the instructions fully and fairly covering these questions, including a fair statement of the law relative to the burden of proof as to each. Thereupon counsel for the respective parties made their arguments to the jury, and a verdict was returned in favor of appellant, as already noticed.

Counsel for respondents now contend that the motions for directed verdict, made at the close of the evidence by counsel for the respective parties, constituted in effect a consent on the part of each that the trial judge should dispose of the case upon the merits as to questions of both law and fact, and that such consent warranted the judge in so disposing of the motion for judgment notwithstanding the verdict, even after the denial of the motions for directed verdict before the submission of the case to the jury. Counsel invoke what they insist is the general rule that when, at the conclusion of a jury trial, before the submission of the case to the jury, motions for directed verdict are made by counsel upon both sides, such action on their part becomes, in effect, a waiver of trial by the jury, and a consent to the submission of the case to the trial judge to be decided by him upon the merits as to questions of both law and fact, citing our decisions in *Knox v. Fuller*, 23 Wash. 34, 62 Pac. 131; *Easterly v. Mills*, 54 Wash. 356, 103 Pac. 475, 28

L. R. A. (N. S.) 952; *Sevier v. Hopkins,* 101 Wash. 404, 172 Pac. 550.

Had the trial judge taken the case from the jury and decided it upon the merits as to questions of both law and fact at the time of disposing of the motions for instructed verdict, before the submission of the case to the jury, we may concede, for present purposes, that he would have been warranted in so disposing of the case; but we are of the opinion that, since these motions were denied and the judge did, as a matter of fact, submit the case to the jury, fully and fairly submitting to it the questions of respondents' negligence and appellant's contributory negligence, that the disposition of the motions for directed verdict, made before such submission of the case to the jury, is a closed incident in the trial which can have no effect upon the subsequent proceedings therein. This is a law case of the purest kind, no relief being sought other than a money judgment for damages. It is not a question, therefore, of the verdict of the jury being merely advisory, as may occur in an equity case. After the disposition of the motions for directed verdict, the trial judge proceeded in the usual course of the trial of a law action, fully and fairly submitting all the issues in the case to the jury which were proper to be submitted to the jury in such a case. It seems quite clear to us that the jury's verdict was as binding upon the judge in this case as in any other law case, and that we must now test the correctness of his disposition of the motion for judgment notwithstanding the verdict in the same manner as if the prior motions for directed verdict had not been made. That is, in so far as the question here to be decided is concerned, we must wholly ignore the making and disposition of these motions. It follows that we are now called upon to determine, as a matter of law, the questions of whether

or not there was evidence to support the verdict rendered by the jury, and whether or not contributory negligence on the part of appellant preventing his recovery was conclusively proven.

At the time appellant was injured, he was walking upon the paved portion of the roadway for vehicles on Alaska street, on the north side of the street car track, in or very near the intersection of that street with Thirty-eighth avenue southeast, in Seattle. Alaska street runs east and west, while Thirty-eighth avenue crosses it at right angles, running north and south. Appellant lives on the east side of Thirty-eighth avenue, a short distance north of Alaska street. The street car track is approximately fifteen feet from the curb on the north side of Alaska street, which fifteen-foot space is occupied by the paved roadway on the north side of the car track. The portion of Alaska street within the car track and to the south thereof is unimproved, and unused by wheeled vehicles.

Late in the afternoon of the day in question, appellant was going to his home, riding on a street car, proceeding west on Alaska street. When he got on the car it was very much crowded with passengers, and apparently by the direction of the conductor he got on the front platform. He rode there until the car stopped at Thirty-eighth avenue, the car stopping as usual with the front platform near the east line of Thirty-eighth avenue. He then stepped off the front platform on the north side, and proceeded north along the line of the sidewalk on the east side of Thirty-eighth avenue towards his home. When he reached the curb at the northeast corner of the street intersection, he was reminded of the fact that he had not paid his fare to the conductor, who was on the rear platform of the street car. He then started back to the car to pay his fare, the car starting about the same

time.  He reached the rear end of the car as it was
proceeding across the street intersection, and some-
what hurriedly walked or ran west along the north
side of the moving car for a distance of about fifteen
feet, and handed his fare to the conductor, who was
still on the rear platform.  He then turned to his right,
which would be to the north or northwest, to go across
the roadway to the north side of Alaska street.  Just
after he had so turned, and reached a point near the
center line of the paved roadway some six or seven
feet from the car, and evidently while still facing
more to the west than to the north or east, he was
struck from the rear by the front left corner of the
automobile being driven by respondent Wilson, being
struck by the front left fender and the left end of the
guard or bumper on the front of the automobile, and
severely injured.  He was struck a blow of such force
as to indicate that the automobile was moving at a
considerable rate of speed.  The speed of the auto-
mobile was by various witnesses estimated at from
ten to twenty miles per hour.  The evidence was, in
any event, such that the jury might well have be-
lieved that the speed of the automobile was at that
time at least fifteen miles per hour, and might also
have believed from the testimony of witnesses that the
speed of the automobile was twenty-five miles or more
per hour just before reaching the street intersection.

Appellant says that, when he started back to the
street car from the curb at the northeast corner of the
street intersection to pay his fare, he noticed an auto-
mobile headed west standing near the north curb of
Alaska street, about twenty feet east of Thirty-eighth
avenue, and that he looked at that automobile with a
view of making sure that it was not going to start
west along the roadway across which he was proceed-
ing.  He also says he saw the automobile which struck

him, when it was coming from the east while it was about a block away. It seems evident that he could not then know or appreciate with any degree of accuracy the speed at which it was coming. This seems to have been observed by him just before he reached the street car to pay his fare. The evidence is not in harmony as to just how far west appellant was when the automobile struck him, but it seems evident that he was well within the boundaries of the intersection, somewhere between the middle of Thirty-eighth avenue and the west boundary thereof. He says he did not see the oncoming automobile between the time he saw it to the east about a block away and almost at the instant it struck him, and we may assume, as it is claimed, that he did not look during that period to the east to observe the oncoming automobile, seemingly resting in the belief that it would in no event reach him before he would pay his fare and get back across the roadway to the north on his way home. The evidence was sufficient, we are quite convinced, to have warranted the jury in believing that the automobile did not, upon its approach to the street intersection and while it was crossing the street intersection, decrease its speed below fifteen miles per hour. Wilson, the driver of the automobile, when at a considerable distance before reaching the intersection, plainly saw appellant and his actions, saw appellant hurry across the roadway and alongside the street car for some little distance and hand the conductor something, during which time it must have been apparent to Wilson that appellant was facing west, with his back to the east, intent on giving something to the conductor on the platform, and as the jury, we think, might well believe, such situation would have caused Wilson to anticipate that appellant intended to, immediately after handing the something to the conductor, again

cross the roadway to the north. We think the evidence was such as to warrant the jury in believing the facts and drawing inferences therefrom as above summarized. We do not say that, were we the triers of the facts, we would necessarily arrive at these same conclusions. We only say that the jury could reasonably do so, and that is as far as we are permitted to go.

We conclude, then, in view of the fact that this unfortunate accident occurred at a public street crossing where it was just as much the duty of Wilson, the driver of the automobile, to look out for appellant, a pedestrian, as it was for appellant to look out for the automobile; in view of the speed at which the jury might believe the automobile was running, both immediately before and at the time of the accident; in view of the situation in which appellant was at the time, his necessary haste, his seeming confidence, well founded, as the jury might well believe, that the oncoming automobile would in no event reach him before he would be back across the roadway to the north, that neither the question of respondents' negligence nor appellant's contributory negligence could be determined as a matter of law, but that both, under all the circumstances, were for the jury to determine. Our decisions in the following cases, we think, support this conclusion: *Hull v. Seattle, Renton & Southern R. Co.,* 60 Wash. 162, 110 Pac. 804; *Richmond v. Tacoma R. & Power Co.,* 67 Wash. 444, 122 Pac. 351; *Davies v. Rose-Marshall Coal Co.,* 74 Wash. 565, 134 Pac. 180; *Lautenschlager v. Seattle,* 77 Wash. 12, 137 Pac. 323; *Fobes Supply Co. v. Kendrick,* 88 Wash. 284, 152 Pac. 1028; *Hines v. Chicago, Milwaukee & St. Paul R. Co.,* 105 Wash. 178, 177 Pac. 795.

We are of the opinion that the judgment notwithstanding the verdict, rendered in favor of respondents, must be reversed, and the case remanded to the supe-

·rior court with directions to enter its judgment in favor of appellant, awarding him recovery as found by the verdict of the jury.

It is so ordered.

HOLCOMB, C. J., MACKINTOSH, MITCHELL, and MAIN, JJ., concur.