GEORGE H. HELBERG

*v.*

JOHN A. NICHOL *et al.*

*Filed at Ottawa March 31, 1894.*

AGENT—*to sell land—concealing price—liability to principal.* A, the owner of land, employed N. & R., real estate agents, to sell the same for a commission, at not less than $275 per acre. By some arrangement, H. & C., another firm of brokers, made a sale of the property as the agents of A for $335 an acre, which price was concealed from the owner. A, in ignorance of the facts, executed a contract for a deed at the price of $275, not to the real purchaser, but to a go-between, who conveyed to the actual purchaser for $335: *Held,* that the agents were bound to account to A for the full sum realized by them on the sale.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

The facts shown by this record are, substantially, that about October 1, 1890, the appellant employed the defendant Ryder, of Nichol & Ryder, real estate agents, to sell the real estate in question, and authorized a sale for $275 per acre. Ryder answered an advertisement in the *Chicago Tribune,* November 9, 1890, and on November 10, as a result, had an interview with Hartman & Carey, also real estate agents. The defendants Hartman & Carey, with the defendant McClintock, went to see the land the next day, November 11, 1890, and again November 12, and on said last day bought the property on the terms offered, and Ryder drew up an agreement for the

sale of the land to T. S. Kintz, and submitted the same to appellant, and after some alterations, assented to by Hartman, the agreement was signed at the office of Nichol & Ryder. The appellant then gave the agreement to Ryder, to go to the office of Hartman &`Carey to have the agreement signed by defendant Kintz, and get the $1000 earnest money.

The written contract provided for the sale of the land by appellant to one T. S. Kintz for the sum of $20,350, being at the rate of $275 per acre. Immediately after procuring appellant's consent to the terms of the contract, and on November 12, Ryder and Hartman went with the contract to Hartman's office, where they met the purchaser, McClintock, and Hartman prepared, or had prepared, another contract, in which T. S. Kintz agreed to sell the same land to McClintock for the sum of $24,790, or at the rate of $335 per acre, and Hartman there signed T. S. Kintz's name to both contracts, appellant, Helberg, having no knowledge except that the sale was to be made *bona fide* to Kintz, and McClintock having no knowledge but that he was buying from the original owner. The fact of the double contract was concealed by Hartman and Ryder from the appellant and from McClintock. McClintock then gave his check for $1000, payable to the order of Nichol & Ryder, and which $1000 was the first payment on both of the contracts. Both Ryder and Hartman were present at the conference with McClintock when he made and delivered his check for $1000, first payment for the land. This check was endorsed over, and delivered to the appellant the next day, and the contract deposited in escrow in the Hide and Leather Bank. At the same time, Hartman left with said bank the agreement of Kintz with McClintock.

After the abstract of title had been brought down, there was a meeting of the appellant with Hartman & Carey and Nichol & Ryder and McClintock. There was also at the conference, Arthur Kintz, to whom the original Kintz contract had been assigned, and there McClintock delivered his two checks for

the balance of the purchase money due under the contract of appellant with Kintz, Arthur Kintz acting only *pro forma* as a buyer and seller. There was a mortgage on the premises sold by appellant, which, in his contract, was to be assumed by Kintz, and in the other contract to be assumed by McClintock. At the time of this last meeting of the several parties, McClintock gave Kintz two checks, aggregating $8250, and Kintz gave McClintock a deed of said premises, and Kintz then and there gave the same checks to appellant. At the same time appellant produced his deed to Arthur Kintz for inspection. One of the checks was drawn on the Bank of Lebanon, Ohio, and was not certified, and appellant refused to accept the same and deliver said deed until the check was collected. The testimony of Hartman is, that T. S. Kintz had authorized him to purchase acre property. There is no evidence that he was authorized to sell for Kintz. The deed of appellant to Kintz, under the contract, was not delivered, but placed in escrow to await the payment of the checks, but the deed from Kintz to McClintock was delivered and placed on record. Shortly thereafter appellant learned of the conduct of the agents, Nichol & Ryder and Hartman & Carey, in the matter, and demanded the full consideration received for his land upon the sale to McClintock, and upon learning that the balance ($4290) was still unpaid by McClintock, and that the trust deed to J. L. Clark to secure the note for $3690, part of said purchase price, was in the possession of the defendant F. C. Kuhns, brought this suit to recover the same, as well as the $750 cash, which cash was subsequently, and after the commencement of this suit, paid by the defendant McClintock to Hartman.

The bill sets up substantially the foregoing facts, and charges that Nichol & Ryder, as the agents of the appellant, (complainant in the court below,) employed Hartman & Carey to assist them in selling this land, and that the combined agents sold the land to the defendant McClintock for $335 per acre, and that to deceive and defraud the complainant the

said agents falsely represented they had sold the land to T. S. Kintz, and that he was not a *bona fide* purchaser. Neither T. S. or Arthur Kintz testified in the case. The evidence also shows that after the note and deed of trust of McClintock for $3690 was taken, Hartman retained possession of them until they were left for safe keeping with one Kuhns, who is made a party defendant. There is evidence showing the declarations of Ryder that he represented Kintz as much as Hartman did, and also that he had got Hartman to help him sell the land. Appellant asked Hartman to reduce the commissions for the sale, and he replied he was to only get a silk hat from Ryder. Answers were filed and replication, and on hearing the bill was dismissed.

MESSRS. VALLETTE & GRIFFEN, for the appellant:

Hartman & Carey were agents of appellant in the sale of land. They undertook to assist Nichol & Ryder, who were the express agents, in the sale of the land, as shown by the joint action of Hartman and Ryder in making the sale to McClintock. In this sale to McClintock, Hartman & Carey assumed to act for the owner of the land, whom they then knew to be Helberg, otherwise they represented nobody. Kintz at that time had no interest in the land, and Hartman & Carey were solely vested with the power to sell by virtue of their association with Nichol & Ryder, and were therefore sub-agents, with Nichol & Ryder, for Helberg. It makes no difference what kind of agents they were, the same rule applies as to their duties and responsibilities. *Dennis* v. *McCagg*, 32 Ill. 429; *Casey* v. *Casey*, 14 id. 112; *Reigard* v. *McNeil*, 38 id. 400; *Watson* v. *Iron and Steel Co.* 15 Ill. App. 509.

· The whole consideration belongs to the principal. *Norris* v. *Tayloe*, 49 Ill. 17; *Kerfoot* v. *Hyman*, 52 id. 512; *Cotton* v. *Holliday*, 59 id. 176; *Merriman* v. *David*, 31 id. 404; *Mason* v. *Bowman*, 62 id. 76.

A person employed by an agent is bound to the principal, and can not make a profit by re-sale.

The land was sold by Ryder and Hartman directly to Mc-Clintock.

Messrs. BANGS & BANGS, for the appellees:

Fraud can not be presumed. It must be proved.

The acts, representations, declarations and admissions of an agent, done and made about the subject matter and at the time, constitute a part of the *res gestæ*, and will bind his principal, although done and made in the absence of the principal. Story on Agency, secs. 134-137; 1 Greenleaf on Evidence, sec. 113; *Cook* v. *Hunt*, 24 Ill. 536; *Railroad Co.* v. *Miller*, 71 id. 463; *Lindblom* v. *Ramsey*, 75 id. 246; *Prickett* v. *Madison County*, 14 Ill. App. 454.

To be an agent, either by appointment, adoption or by volunteering, there must exist between such agent and his principal a relation of trust and confidence at the time and in respect to the subject matter, which trust and confidence the principal must rely and act upon, and with reference to which he must act to his detriment, and in a manner different from what he naturally would have acted but for reliance upon such confidence. And this confidence can not be presumed, but must be proved. Story's Eq. Jur. sec. 308; *Mason* v. *Caldwell*, 5 Gilm. 196; *McDonald* v. *Fithian*, 1 id. 269; *Casey* v. *Casey*, 14 Ill. 112; *Dennis* v. *McCagg*, 32 id. 429; *Reigard* v. *McNeil*, 38 id. 401; *Watson* v. *Iron and Steel Co.* 15 Ill. App. 509; *DeBussche* v. *Alt*, L. R. Ch. Div. 268.

A party negotiating for the purchase of a piece of property of another, may, pending such negotiations, offer to sell it to another without thereby becoming the agent of the owner.

Mr. JUSTICE PHILLIPS delivered the opinion of the Court:

From the evidence appearing on this record, the appellant, who owned seventy-four acres of land near the city of Chicago,

authorized one Ryder, of the firm of Nichol & Ryder, to sell the same at $275 per acre, for which he was to pay a comission of two and one-half per cent. The land was encumbered by a mortgage to secure an indebtedness of $11,100, which had some time yet to run. Hartman, of the firm of Hartman & Carey, real estate agents of the city of Chicago, was, as he testifies, authorized to purchase property for different persons, among others one T. S. Kintz and one W. C. McClintock. It nowhere is shown that Hartman was authorized to sell the property he might purchase for either of them. Through Ryder answering an advertisement published over the names of Hartman & Carey grew the negotiations and conveyances on which this litigation was brought about.

On November 11, 1890, Hartman & Carey and McClintock went to see certain property which Ryder had designated as the property he had to sell for appellant. On Hartman & Carey making further inquiries of Ryder, it was learned that Ryder had designated the wrong land, and he getting a correct description of the land and furnishing that to Hartman & Carey, they, with McClintock, on November 12, 1890, went to see the land owned by this appellant. McClintock was desirous of purchasing acre realty, and both times that Hartman & Carey visited the premises, accompanied them, and agreed to purchase this property at $335 per acre. Hartman & Carey had been informed by Ryder, of Nichol & Ryder, that the appellant would sell the property at $275 per acre. Hartman had no contract with McClintock by which he was to receive anything from him for negotiating a purchase, so far as the record in this case is concerned.

Hartman & Carey notified Nichol & Ryder they would take the property. To this time no one had anything to do with this transaction except Nichol & Ryder, Hartman & Carey, McClintock and appellant. Ryder was directed to draw up the contract as a sale to T. S. Kintz, and Hartman wanted the owner of the realty to sign the contract. The contract

was drawn up, signed by appellant, and by T. S. Kintz, by Hartman, by which the land was to be conveyed to Kintz at $275 per acre, he to assume the incumbrance. This contract was taken to Hartman's office by Ryder, where he met Mc-Clintock, and Hartman drew up a contract between T. S. Kintz and McClintock, by which McClintock was to purchase the land from Kintz at $335 per acre, and that contract was signed by Kintz, by Hartman. The conviction is positive, from this evidence, that Ryder knew of this contract, and by this time was aware of the fact that the real purchaser was McClintock. His declarations are proven that he represented Kintz as much as did Hartman. He denies making such declarations, but from the whole evidence the weight of proof shows he made the declarations as testified to.

McClintock, whilst at Hartman's office with Hartman and Ryder, was about to draw his check for $1000 as earnest money, in favor of Kintz, when, at the request of Ryder, it was made payable to Nichol & Ryder. At this time the banks were not open, and it was stipulated that Ryder should retain the agreement signed by appellant and Hartman, and to retain the check until morning. On the next morning the check was endorsed and delivered to appellant, and that check was deposited in a bank for collection, and at the same time appellant's contract was left with the bank, as also was the contract between Kintz and McClintock. At this time appellant had no information of what McClintock was purchasing, and McClintock knew not what appellant was selling. By the terms of the contract the abstract was to be brought up to that date, and was to be submitted for examination, and a certain period of time allowed for that purpose. Before that period of time arrived, McClintock gave two checks, amounting in the aggregate to $8250, to Arthur Kintz, and thereupon, at once, McClintock, Arthur Kintz, Hartman and Carey went to the office of Nichol & Ryder, where they met the members of that firm and the appellant, and there Kintz delivered a deed

for the premises to McClintock, and the checks were delivered to Helberg. These two checks, with the $1000 earnest money and the assumption of the indebtedness of $11,100, made up the amount of $20,350,—the amount which seventy-four acres would bring at $275 per acre. One of those checks was not certified, and the appellant declined to accept the same, whereupon his deed was placed as an escrow until the check was paid.

There is in this record no evidence as to T. S. Kintz, except the testimony of Hartman, that he was authorized to buy acre property for him, and the evidence showing Hartman's signing his name to each of those contracts and taking the receipt of appellant for $1000 by McClintock's check, together with the note for $3690, payable to him, secured by the trust deed, with T. S. Kintz as beneficiary. We find nothing in the record showing any authority in Hartman to assign this contract, if he did so; and if assigned by T. S. Kintz, we find nothing showing any authority to take the note secured by the deed of trust in his name and payable to him. The witnesses are all silent as to any word spoken or written by T. S. Kintz in reference to this matter, save the testimony of Hartman that he was authorized to buy property for him. The absence of any explanation of these facts, together with the proven facts, excite the gravest doubt of the fairness of this transaction. This is coupled with the testimony of H. W. Mahan, who states that Hartman said to him he "had made a good thing off McClintock; had made over $4000; had done it by using a friend of his as a go-between, using a double contract." But two contracts were made—that between Helberg and Kintz, and that between Kintz and McClintock. If Hartman used a double contract it could be none other than these.

It can not, from this evidence, be believed that either of the Kintz's was a *bona fide* purchaser. The real contract was a sale by appellant, of which McClintock was the real purchaser. Hartman said to Helberg, when applied to by him

to reduce the commissions on the sale, that all he was to get out of that sale was, that Ryder had promised to give him a silk hat, and the whole transaction shows that Hartman & Carey and Nichol & Ryder were acting together as agents of Helberg in making the sale to McClintock. Ryder evidently knew what was being done. Hartman knew it, and between the real seller and the real buyer there is a sum paid by the buyer and not received by the seller of $4440. The transaction is one that should not be permitted to stand. (*Kerfoot et al.* v. *Hyman,* 52 Ill. 512.) The evidence in this record shows the complainant was entitled to recover, and it was error to dismiss this bill.

The judgment of the Appellate Court and the decree of the Superior Court are reversed and the cause remanded.

*Judgment reversed.*