[No. 7800. Decided August 3, 1909.]

Louisa Easterly, *Appellant*, v. John Mills *et al.*,
*Respondents*.[1]

TRIAL—MOTIONS—WAIVER OF JURY—APPEAL—DECISION WITHOUT REMAND. Where, at the close of plaintiff's case, the defendant moves to discharge the jury and for judgment, and plaintiff moves for a directed verdict, the parties waive a verdict, and authorize judgment by the court; and upon reversing judgment for the defendant, the supreme court will enter judgment for plaintiff without remand for a new trial.

BROKERS—PRINCIPAL AND AGENT — FRAUD ON PRINCIPAL — SECRET PROFIT. Brokers, authorized to make a sale of property at $4,000, one-half cash, are guilty of a constructive fraud upon their principal and are liable for secret profits made by them, where, in order to effect such sale, they made tentative arrangements to sell to S. for $4,500, $500 to be paid in cash, procured the vendor's consent to a sale to W. for $4,000, one-half cash, and secretly arranged a resale from W. to S. for $4,500, $500 cash, according to the tentative agreement, without informing the vendor of such resale or of the fact that W. paid the brokers an additional commission of $150; as the brokers secretly made an additional profit of $150 and prevented the vendor from accepting the first sale at $4,500, and making other arrangements for one-half cash, it being their duty to communicate such offer of S. to their principal.

SAME—COMMISSIONS—CONSTRUCTIVE FRAUD. In such a case, the brokers will not lose their commissions on the original sale, paid by the vendor, where the vendor in her complaint admitted that they were entitled thereto.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered October 26, 1908, by direction of the court, after a trial before a jury, dismissing an action to recover for fraud of an agent. Reversed.

*Bates, Peer & Peterson,* for appellant.

*L. C. Stevenson* and *M. F. Porter,* for respondents.

CROW, J.—Action by Louisa Easterly against John Mills and Fred Mills, copartners as John Mills & Son, to recover

[1]Reported in 103 Pac. 475.

a portion of the proceeds of a sale of real estate made by the defendants as her agent. On trial, and at the close of the evidence, the defendants moved the court to discharge the jury and enter judgment in their favor. Thereupon the plaintiff moved for a directed verdict in her favor. The defendants' motion being sustained, the action was dismissed. The plaintiff has appealed.

The appellant contends that the trial court erred in denying her motion for a directed verdict. The respondents insist that the proper judgment was entered, and contend that, even though there had been sufficient evidence in favor of appellant to warrant its submission to the jury, the appellant and respondents by their joint motions withdrew the cause from the jury. When the two motions were interposed, there being no conflict in the evidence as to any material fact, the parties in effect waived a verdict of the jury, and submitted the cause for determination by the trial judge, who was then authorized to enter such judgment as the evidence warranted, and we will on this appeal dispose of the case on the same theory. *Knox v. Fuller*, 23 Wash. 34, 62 Pac. 131; *Grigsby v. Western Union Tel. Co.*, 5 S. D. 561, 59 N. W. 734.

The following facts appear from the evidence: That on February 18, 1907, the appellant, being the owner of certain improved real estate in Puyallup, entered into a written contract whereby she authorized the respondents to sell the same for $4,000, one-half cash, and agreed to pay them a commission of $150; that on or about April 29, 1907, one T. Shenkenberg approached the respondent John Mills with a proposition to buy the place for $4,500, paying $500 cash and the remainder in installments; that thereafter Mills effected an arrangement with one J. H. Williams, by which he was to purchase the property from the appellant for $4,000 cash, and immediately sell to Shenkenberg for $4,500, payable in installments; that before seeing Williams, Mills placed Shenkenberg in possession of the property and accepted $50 from him as a deposit, with the understanding that if he finally

bought, it should apply on the purchase price, otherwise he was to become appellant's tenant, the deposit to be then applied on rent; that after separate negotiations with Williams and Shenkenberg, the respondent John Mills went to Everett, where Mrs. Easterly lived; that he told her he could sell the place for $4,000, and effect an arrangement whereby the sale would be for cash, but that he could not sell for any larger sum; that, relying on these statements, appellant finally agreed to sell for $4,000, executed a deed to Williams reciting a consideration of $10, and on June 11, 1907, received from respondents a draft for $3,338, as proceeds of the sale, less commission and expenses incurred. Immediately thereafter a written contract of sale was executed by Williams to Shenkenberg for $4,500, which was antedated to April 29, 1907, the day upon which the original interview occurred between Shenkenberg and the respondent John Mills. Williams then paid respondents an additional commission of $150. The respondents did not inform the appellant that they could sell to Shenkenberg for $4,500; that they had placed Shenkenberg in possession, or that Williams was about to sell to Shenkenberg for $4,500 and pay them an additional commission of $150.

In September, 1907, the appellant first learned of the sale to Shenkenberg, and commenced this action to recover the extra $500, less commission thereon. The respondents have shown that the appellant expressed herself as satisfied with the sale at the time it was closed, and that they were authorized by their written contract of employment to sell for $4,000. They contend that they could not sell for $4,500 and secure $2,000 cash; that the appellant at the time needed more money than the $500 cash payment Shenkenberg was willing and able to make; that they carried out appellant's specific instructions; that they first made the sale to Williams for appellant, and that after their relation to her as agent had been thus terminated, they made the second sale to Shenkenberg. These contentions are not fully sustained by

the evidence, but conceding them all to be true, and assuming that no fraud was intended, respondents nevertheless ignored and failed to perform duties which devolved upon them as appellant's agents.

"The relation between a broker and his principal is a fiduciary one, calling for the exercise of the utmost good faith. It is the duty of the broker to serve his principal to the latter's best advantage, and all profits which are the result of the relation belong to the principal." 11 Current Law, 450, and cases cited.

"A broker is not permitted to deal with the subject-matter of his agency for his own advantage, but must give the principal the benefit of any profit he may make in the transaction. Thus where a broker, employed to sell, sells at a higher price than that authorized by the principal, or than that represented by the broker as the price received, or where a broker, employed to purchase, buys at a less price than that limited by or represented to the principal, he must account to his principal for the difference." 4 Am. & Eng. Ency. Law (2d ed.), p. 969.

In *Holmes v. Cathcart*, 88 Minn. 213, 92 N. W. 956, 97 Am. St. 513, 516, 60 L. R. A. 73, the supreme court of Minnesota said:

"The principal may authorize his agent to sell or exchange his property, but it does not necessarily follow that the agent, by carrying out the specific instructions given him, fully performs his duty, and is relieved from liability. He is bound to the exercise of the most perfect good faith, and to keep his principal informed of facts coming to his knowledge. affecting his rights and interests. If, after receiving instructions to sell property on certain specified terms, the agent learns that other and more advantageous terms can be obtained, it is his plain duty, and he is under every legal and moral obligation, to communicate the facts to the principal, that he may act advisedly in the premises."

If a real estate broker sells for a price in advance of that stipulated by his principal, and fails to account to the latter or inform him of the true facts, he becomes liable to his principal for the excess. A broker is not entitled to realize

any financial benefit in addition to his stipulated commission as the result of secret negotiations which he conceals from his principal. Such profits in equity and justice belong to the principal, and some of the authorities hold that if the agent realizes a profit from concealed negotiations, he must not only account to his principal therefor, but that he will forfeit his right to the stipulated commission. *Jameson v. Kempton,* 52 Wash. 106, 100 Pac. 186; *Stearns v. Hochbrunn,* 24 Wash. 206, 64 Pac. 165; *De L'Archerie v. Rutherford, ante* p. 134, 102 Pac. 1033; *Collins v. McClurg,* 1 Colo. App. 348; *Humphrey v. Robinson,* 134 N. C. 432, 46 S. E. 953; *Cottom v. Holliday,* 59 Ill. 176; *Jansen v. Williams,* 36 Neb. 869, 55 N. W. 279; *Eidson v. Saxon* (Tex. Civ. App.), 30 S. W. 957; *Dodd v. Wakeman,* 26 N. J. Eq. 484; *Deter v. Jackson,* 76 Kan. 568, 92 Pac. 546; *Helberg v. Nichol,* 149 Ill. 249, 37 N. E. 63. Without regard to the respondents' intentions, they were at least guilty of a constructive fraud. John Mills, the active partner, in part testified as follows:

"Mr. Shenkenberg liked this place very much and they decided to take it, if he could get it on his terms at $4,500. . . . We told Mr. Shenkenberg we could not sell it to him; that Mrs. Easterly would not sell it to him under those conditions; that she required half or approximately half cash. But, I said, it is possible we can get a third party to carry this title and sell it to you on these terms, and I took the deposit from him with the perfect understanding on his part that we might not be able to get the deal through at all. If we were not able to do that we would either refund his money or the money he paid would apply as rental. Mr. Shenkenberg thoroughly understood that. We had some of his money and we had something to tie to, so that we went out and tried to find somebody that would take that title . . . We finally found Mr. Williams who, for the $500 bonus, was willing to buy this property, inasmuch as we had Mr. Shenkenberg in tow and could re-sell it for him immediately after for $4,500 on terms. Under these conditions Mr. Williams was willing to take the place and did take the place. When

we sold the place to Mr. Williams we were acting for Mrs. Easterly . . . Q. Now, then, you may explain to the jury why that contract of sale was dated back until April, if you know. A. I know exactly why. Money was hard to get and our experience had shown that it was difficult to find a purchaser for that place and as an additional inducement to Mr. Williams we told him that the interest on this contract would start back from the time that Mr. Shenkenberg made his deposit or to that day. Now, this was agreeable to Mr. Shenkenberg. We talked with him and he was agreeable to that and that brought the first annual payment of interest on Mr. Williams' contract that much nearer and was an additional incentive to him to pay out the money and buy this place . . . I will say that we were using every effort at our command to effect this sale for Mrs. Easterly and after we had a tentative agreement with Mr. Shenkenberg that was a very great help in that transaction. In fact, it would have been impossible to have gotten the deal through without the preliminary contract with Mr. Shenkenberg . . . I told Mrs. Easterly the best we could do—the best sale we could make was $4,000 cash, which was exactly the case . . . The sale could not have gone through without the preliminary arrangement with Mr. Shenkenberg . . . Q. You got a commission from Mr. Williams for making that sale? A. Part of a commission, yes. Q. You got your commission all right from Mrs. Easterly for making this sale? A. Yes, sir. Q. Part of commission—how much of a commission from Mr. Williams? A. $150."

In *Kingsley v. Wheeler*, 95 Minn. 360, 104 N. W. 543, the court said:

"An agent to sell land does not fulfill the measure of legal requirements by merely carrying out his specific instructions. He owes the duty of making a full, fair, and prompt disclosure of all facts affecting the principal's rights or interests, or pertaining to the sale of land by him. He is denied the right to profit at the expense of his principal by concealment of facts which he ought to have revealed. Whatever advantage accrues to him by violation of his duties he must make good to his principal whom he has wronged."

Although it was their duty to do so, respondents never

communicated to appellant the fact that they could sell to Shenkenberg for $4,500 on his terms. Had they done so, she, being thus advised, might have effected a more satisfactory and less expensive arrangement for realizing the cash which she then needed. She was at least entitled to the chance of doing so. Respondents had negotiated with Shenkenberg and placed him in possession in contemplation of a sale for $4,500. As the result of their negotiations with him and Williams, they collected an additional commission of $150 of which appellant was ignorant. This they were not entitled to do, and any profit thus secretly earned by them must inure to her benefit. There is no evidence showing that Williams was in collusion with the respondents, or that he knew of their concealment of the actual facts from appellant. Although some courts have announced the rule that in cases of this kind the agent loses his right to a commission, we cannot apply any such rule here, as the appellant in her complaint has conceded respondents' right to the stipulated commission on the original sale. Their additional profit, realized from secret negotiations, was the $150 received from Williams without appellant's knowledge, and we now hold that they must account to appellant for that sum, she being entitled to a directed verdict therefor.

Respondents, as evidence of their good faith, contend that they conducted no negotiations for a sale to Williams until after their agency for the appellant had been terminated. There is no question, however, but that their original negotiations were with Shenkenberg, and that they would not have entered into any arrangement with Williams had they not relied on such original negotiations with Shenkenberg and the deposit of the $50 made by him, which they concealed from appellant. They were undoubtedly appellant's agents when dealing with Williams.

The judgment is reversed and the cause remanded with instructions to enter judgment in favor of appellant for

$150, with interest from June 11, 1907, and costs. The ap-- pellant will recover her costs in this court.

RUDKIN, C. J., MOUNT, PARKER, DUNBAR, FULLERTON, CHADWICK, and GOSE, JJ., concur.