# CHARLESTON.

NEWMARK GRAIN COMPANY *v.* ELKINS PROVISION & STORAGE COMPANY.

(No. 5187.)

Submitted March 24, 1925.          Decided March 31, 1925.

DEPOSITIONS—*Objections to Depositions Not Going to Competency or Relevancy of Issues Involved. Which Could be Cured by Retaking, if Not Made Before Trial Begins, Are Waived.*

Objections to depositions, not going to their competency or relevancy to the issues involved, and which could be

cured by the retaking thereof, must be made before the trial begins, else they will be deemed to have been waived.

(Depositions, 18 C. J. §§ 208, 381.)

(NOTE:—Parenthetical references by Editors. C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Randolph County.

Action by the Newmark Grain Company against the Elkins Provision & Storage Company. Judgment for defendant, and plaintiff brings error.

*Reversed; verdict set aside; case remanded for new trial.*

*W. B. & E. L. Maxwell*, for plaintiff in error.
*Spears & Irons*, for defendant in error.

MILLER, JUDGE:

By this action in assumpsit plaintiff seeks to recover damages alleged to have accrued to it by reason of defendant's refusal to receive and pay for a car load of beans sold to the latter and delivered at the point designated in the contract of sale. From a judgment on the verdict for defendant, directed by the trial court, plaintiff obtained the present writ of error.

The plaintiff, a resident of Los Angeles County, California, sold to defendant, by a written contract, through its broker or representative at Clarksburg, W. Va., the beans in question. The terms of the sale were: "F. O. B. Pacific Coast Common Shipping Point. Draft with documents attached payable in New York, Chicago or San Francisco exchange. Documents against payment." The contract also contained the following provision: "Notwithstanding shipped to seller's order, goods are at risk of buyer from and after delivery to carrier, and buyer hereby assumes responsibility as to shortage, loss, delay or damage in transit upon issuance by carrier of bill of lading or shipping receipt showing carrier's count." Defendant refused to honor the plaintiff's draft with bill of lading attached, or to accept the goods, because, as it claims, when the car was opened at Elk-

ins, W. Va., the beans were damaged and unsalable. All the evidence presented to the court and jury was by depositions, taken at Los Angeles, Philadelphia, and Clarksburg. After all the depositions had been read to the jury, the defendant moved the court to strike from the depositions of plaintiff's witnesses, Fritz and Krauss, all reference to the fact testified to by them, that the plaintiff, upon delivery of the beans to the carrier, had received from it "a clear bill of lading." This motion the court sustained. Then, upon motion, the court excluded all of plaintiff's evidence, and directed the jury to find for defendant.

From the action of the trial court in excluding plaintiff's evidence, it is to be assumed that the evidence was not considered sufficient to sustain plaintiff's case, after the striking out of the testimony of Fritz and Krauss as to the "clear bill of lading."

The only evidence as to the condition of the beans when delivered at Elkins, is the deposition of Hunter, representative of the broker at Clarksburg. He says that when he examined the goods at Elkins, in the presence of defendant's representatives and the railroad company's agent, a number of the bags containing the beans showed evidence of a black grease, which had the odor of kerosene oil; that the grease was on the bags only, and not in the beans; and that there was no grease of that character on the roof of the car over the beans. He did not look down into the car to see how far the grease extended, and could not tell how long it had been on the sacks. His opinion was that the grease or oil would have rendered the beans unmarketable. But the goods were sold in Philadelphia some months later, though at a reduced price, after the market was lower. The commission merchant who disposed of them testified that: "We received full market price for them, and in one or two instances a little above the market." It seems that the reduced price at which the goods were disposed of was due to decline in the market, and not to the character of the beans. The last were sold in May, following their arrival at Elkins in December. The Philadelphia broker testified that he sold them as soon as he could get a bid; and that the market

declined greatly between January and March, but was a little higher in May. He says: ''The lima beans were strictly choice recleaned limas, and the other beans were to the best of my knowledge up to the full standard grading.'' He says not a word about the damaged condition claimed by defendant; but testified that none of his customers made complaint about any of the beans. The witness Cripe, who says that he had sole charge of all beans that came into and went out of plaintiff's warehouse, and supervised all cleaning and shipping, testified that the beans were thoroughly cleaned and put in new sacks; that the sacks were clean; and that there was no marking thereon except the stenciling of the net weight of the contents and the date packed, which was put on before the bags were filled; and that a dry mixture of lampblack and coal oil was used for stenciling.

Excluding the testimony of Fritz and Krauss, that plaintiff received from the carrier a ''clean bill of lading,'' we think there was sufficient evidence to take the case to the jury on the issues involved. There is evidence of the condition of the beans at the time they were loaded, and when sold in Philadelphia, as well as of their condition on arrival at Elkins, W. Va. The witness Cripe was qualified to testify as to the condition of the beans when loaded; and surely, the broker in Philadelphia would have discovered any defect existing in the goods, in disposing of the 66,000 pounds sold by him. There is no evidence that the beans were recleaned or otherwise treated to remove the odor of the oil testified to by the witness Hunter. And they were all disposed of at the market prices then prevailing in Philadelphia. The testimony of Cripe and the Philadelphia broker can not be wholly disregarded, as it was by sustaining the motion to exclude all of plaintiff's evidence.

Plaintiff raises the point that defendant's objection to the depositions of Fritz and Krauss came too late; that to be availing, it should have been interposed before trial, to give plaintiff an opportunity to retake the depositions, and correct the defect relied on. Defendant made no appearance to the taking of the depositions at Los Angeles, though notice was given it. Its objection was based on the theory that

the original bill of lading was the best evidence, and that plaintiff could not prove the contents of the bill, without good reason for not producing the original. In *Irons* v. *Bias,* 92 W. Va. 236, 241, it was said: ''Orderly procedure requires that such motion be made before trial, to the end that the defect may be corrected by amendment or the retaking of the deposition; and, in almost all jurisdictions, failure to make it before trial works a waiver, by virtue of statutes or the common law as judicially declared, unless the objection is based upon incompetency of the witness or irrelevancy of the evidence. In these two cases, the reason of the rule ceases, because the depositions are incurably defective and the party offering them is not injured by the delay. In the absence of a statute, failure to move to suppress before trial waives the defect, except in the two instances just mentioned. *Cabell Co.* v. *Mathers,* 72 W. Va. 807; *Supply etc. Co.* v. *Consolidated etc. Co.,* 42 W. Va. 583; *Doane* v. *Glenn,* 21 Wall. (U. S.) 33; *Howard* v. *Manufacturing Co.,* 139 U. S. 199; *Schutte* v. *Thompson,* 82 U. S. 151.'' See, also, other cases cited in the opinion.

We think this case falls within the general rule just stated. The witnesses were not incompetent; and the evidence offered was relevant to the issue presented. The fact that the evidence offered was secondary, and not the best evidence of the fact in issue, does not render it irrelevant. It is to be presumed that the bill of lading referred to by Fritz and Krauss, was the Uniform Bill of Lading, prescribed by the Interstate Commerce Commission, which contains the provision that the carrier received the goods ''in apparent good order,'' unless otherwise modified by notation on the bill when issued. If timely objection had been made, plaintiff could either have supplied the original bill of lading, or could have explained why it could not or did not do so. The depositions were not incurably defective, and do not come under the exception to the general rule stated in *Irons* v. *Bias, supra.* ''The party taking the deposition is entitled to have the question of its admissibility settled in advance. Good faith and due diligence are required on both sides. When such objections, under the circumstances of this case, are withheld until the trial is

in progress, they must be regarded as waived, and the deposition should be admitted in evidence. This is demanded by the interests of justice. It is necessary to prevent surprise and the sacrifice of substantial rights. It subjects the other party to no hardship. All that is exacted of him is proper frankness." *Doane* v. *Glenn,* 21 Wall. (U. S.) 33. Defendant had notice of the depositions to be taken at Los Angeles, but made no appearance. The depositions were filed with the clerk of the circuit court of Randolph County two years before the trial. After notice defendant might reasonably have expected that the depositions would be filed in the clerk's office before trial. In view of the authorities cited above, and the facts disclosed, we are of opinion that defendant's objection came too late, and must be considered as waived.

The judgment of the lower court will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed; verdict set aside; case remanded for new trial.*