[No. 26813. Department One. April 4, 1938.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, *Respondent,* v. SAMUEL STOTSKY, *Appellant.*[1]

[1]Reported in 77 P. (2d) 990.

*Ben A. Maslan* and *Philip Tworoger,* for appellant.

*Carroll Hendron* and *E. P. Whiting,* for respondent.

HOLCOMB, J.—This action was brought to recover a deficiency remaining due on a note after the sale of certain real property situated in California pursuant to a power of sale contained in a deed of trust. Judgment was entered for respondent upon a directed verdict in its favor, and thereupon appellant appealed.

The facts necessary to present the issues raised are these: On or about December 22, 1927, appellant executed and delivered to The First National Bank of San Pedro, California, a certain promissory note in the sum of $11,500, payable to this bank, with interest until paid at seven per cent per annum. To secure the payment of this note, appellant, as trustor, also executed and delivered to respondent, as trustee for the above mentioned bank, a deed of trust on the same date conveying certain real property in the counties of Los Angeles and San Diego, California.

The trust deed provides, in part:

"G. (1) Should breach or default be made by Trustor in payment of any indebtedness and/or in performance of any obligation, covenant, promise or agreement herein mentioned, then Beneficiary may declare all sums secured hereby immediately due, and in such case, shall execute and deliver to Trustee a written Declaration of Default and Demand for Sale and shall surrender to Trustee this Deed of Trust, the note and receipts or other documents evidencing any expenditure secured hereby. Thereafter there shall be recorded in the office of the recorder of the county or counties wherein said real property or some part thereof is situated, a notice of such breach or default and of election to sell or cause to be sold the herein described property to satisfy the obligations hereof.

"(2) After three months shall have elapsed following such recordation of said notice, Trustee, without demand on Trustor, shall sell said property as herein

provided, having first given notice of the time and place of such sale in the manner and for a time not less than that required by the laws of the State of California for sales of real property under Deeds of Trust.

"(3)  Trustee may postpone sale of all, or any portion, of said property by public announcement at the time fixed by said notice of sale, and may thereafter postpone said sale from time to time by public announcement at the time fixed by the preceding postponement; and without further notice it may make such sale at the time to which the same shall be so postponed, provided, however, that the sale or any postponement thereof must be made at the place fixed by the original notice of sale.

"(4)  At the time of sale so fixed, Trustee may sell the property so advertised, or any part thereof, either as a whole or in separate parcels at its sole discretion, at public auction, to the highest bidder for cash in United States gold coin, all payable at time of sale, and after any such sale and due payment made, shall execute and deliver to such purchaser a deed or deeds conveying the property so sold, but without covenant or warranty, express or implied, regarding title, possession or incumbrances.  Trustor hereby agrees to surrender immediately and without demand possession of said property to such purchaser.  The recitals in such deed or deeds of any matters or facts affecting the regularity or validity of said sale shall be conclusive proof of the truthfulness thereof and such deed or deeds shall be conclusive against all persons as to all matters or facts therein recited.  Trustee, Beneficiary, any person on behalf of either, or any other person, may purchase at such sale."

The complaint alleged that, on January 17, 1928, the trust deed was recorded in the office of the county recorder of Los Angeles county, California, and that, on January 24, 1928, this trust deed was also recorded in the office of the county recorder of San Diego county, California.  The complaint sets forth several California statutes and amendments thereto relating to the

steps to be taken in effecting the sale of the security provided for in the trust deed in the event of the default of the trustor.

Respondent alleged that appellant was in default in the payment of principal and interest on the aforementioned note, and that taxes and assessments duly levied upon the property described in the trust deed were delinquent. The complaint also recites that respondent notified the trustee in writing of his default and that notice of default and election to cause the property described in the deed of trust to be sold to satisfy the obligations of the trust deed was being recorded in the office of the county recorders of Los Angeles and San Diego counties, respectively, and demanded the trustee sell the property mentioned under the terms of the trust deed. The complaint also alleges that notices of the sale of the property at public auction to the highest bidder were posted and published setting forth the date, time, and place of the sale, pursuant to certain California statutes.

On May 8, 1934, respondent, being the highest bidder at the public auction, purchased the real property described in the trust deed situated in Los Angeles county for the sum of $6,800. On the same day, respondent, being the highest bidder, purchased the real property described in the trust deed situated in San Diego county for the sum of $1,700. On May 17, 1934, deeds covering these properties were executed and delivered by the trustee to respondent. It was further alleged that, after the above mentioned sale, there remained unpaid upon the note in question $6,131.36 plus interest thereon at the rate of seven per cent per annum from May 8, 1934, which sum defendant had refused to pay. Therefore, respondent prayed for judgment against appellant for the sum of $6,131.36, to-

gether with interest thereon at the rate of seven per cent per annum from May 8, 1934.

Appellant filed an amended demurrer to the complaint on the first four grounds set out in Rem. Rev. Stat., § 259 [P. C. § 8346], and also on the ground that the complaint did not state facts sufficient to constitute a cause of action and that the action had not been commenced within the time limited by law, and especially within the provisions of §§ 335 to 337 of the Code of Civil Procedure of California.

Thereafter, appellant answered by a general denial and set up several affirmative defenses. First, that the action was not commenced within the time limited by law and is barred by § 335 of the Code of Civil Procedure of California, since this action arose between residents of California. Second, actions for money judgments for the balance due upon an obligation for the payment of which a deed of trust was given following the exercise of the power of sale must be brought within three months of the time of sale under such deed, under § 337 of the Code of Civil Procedure of California, as amended by chapter 790 of the 1933 statutes of California, and under § 580-a, being part of chapter 642 of the statutes of California for 1933 of the Code of Civil Procedure of California. Third, respondent orally agreed that, in consideration of appellant's not contesting the sale or making any attempt to redeem the property from the sale, respondent would not seek a deficiency judgment against appellant. It was further averred that, relying upon this agreement, appellant did not contest the sale under the trust deed nor attempt to redeem the property from the sale. Therefore, appellant prayed that respondent's action be dismissed.

In its reply, respondent admitted the enactment of § 337 of the Code of Civil Procedure of California, but

alleged that this statute is not retroactive and is unconstitutional with respect to contracts entered into prior to its adoption, and that, at all times mentioned in the complaint, § 351 of the Code of Civil Procedure of California, providing the time of one's absence from the state is not part of the time limited for the commencement of the action, was still in full force and effect; and that, within ninety days after May 8, 1934, appellant left California and took up his residence in the state of Washington.

Respondent also admitted the existence of the statutes of California referred to by appellant, but alleged both of these statutes were inapplicable to the instant case, and denied appellant's affirmative defenses.

The trial court entered an order on November 30, 1936, directing a commission to be issued to W. C. Wren for the purpose of taking depositions at Los Angeles, California, of L. S. Anderson, J. H. Crosby and Howard Waterman, residents of California.

A trial by jury was demanded and granted. At the conclusion of respondent's case, appellant moved that the action be dismissed, which motion the court denied. At the conclusion of appellant's case, respondent moved the court to direct the jury to return a verdict for respondent in accordance with the prayer of its complaint. The jury was thereafter instructed to bring in a verdict in favor of respondent, to which instruction appellant excepted. Motions for judgment n. o. v. and for a new trial were made and denied. Judgment was entered for respondent in the sum of $7,408.98, plus interest at seven per cent per annum until paid, and this appeal follows.

A number of assignments of error are made by appellant, but it is only necessary to pass upon two of them, namely, whether the trial court erred in admitting and allowing to be read into the record the depo-

sitions taken in Los Angeles and the several exhibits attached thereto; and whether the trial court erred in granting respondent's motion for a directed verdict.

The depositions were taken in Los Angeles, and two of the witnesses came from San Pedro to Los Angeles for that express purpose. At the conclusion of the testimony embodied in the depositions, it was indicated that it was inconvenient to have certain witnesses come back from San Pedro to sign them. Therefore, it was stipulated that the depositions might be read over, corrected, and signed by the witnesses before any notary public of Los Angeles county, California, provided the commissioner checked them over and determined that the witnesses were signing the correct instrument. The witnesses did sign before a notary public for the county of Los Angeles, California, W. C. Wren, the commissioner appointed by the superior court of Washington, attaching a certificate to them certifying that they were taken before him. These depositions were, in turn, forwarded to the clerk of the superior court of King county, Washington.

Appellant contends that the depositions were not properly certified, as required by Rem. Rev. Stat., § 1242 [P. C. § 7737], inasmuch as the certificate does not recite that the depositions were carefully read by the witnesses. He cites the case of *Nasser v. Gaston,* 70 Wash. 685, 127 Pac. 470, in support of his position. In that case, no certificate was attached to the depositions, and they were not returned to the clerk of the court. It also does not appear that the parties entered into any stipulation in the cited case relative to the manner in which the depositions were to be taken.

Under the facts of this case, there was substantial compliance with the statute in taking the depositions. In *Nasser v. Gaston, supra,* we recognized that, although some courts require strict compliance with the

statute for the taking and returning of depositions, this court favors the rule of substantial compliance. *Hobart v. Jones,* 5 Wash. 385, 31 Pac. 879; 18 C. J. 709, § 270.

Moreover, the motion to quash and to strike this deposition was not made until after the jury was empaneled, and therefore the objections came too late, since they were not made before the trial, even though these depositions were received by the clerk's office on January 5, 1937, and this cause did not come on for trial until February 15, 1937.

"On the same principle that objections, when made for the first time at the trial, are too late to permit the correction of errors which might otherwise be remedied, the courts generally refuse to entertain motions to suppress depositions unless such motions are made before the trial." 4 Jones, Commentaries on Evidence (2d ed.), 3708, § 2002.

Also, *Inter-Ocean Casualty Co. v. Copeland,* 184 Ark. 648, 43 S. W. (2d) 65; *Deane Steam Pump Co. v. Green & Clark,* 31 Mo. App. 269; *Graham-Brown Shoe Co. v. Snodgrass,* 257 S. W. (Tex. Civ. App.) 632; *Irons v. Bias,* 92 W. Va. 236, 114 S. E. 566; *Newmark Grain Co. v. Elkins Provision & Storage Co.,* 98 W. Va. 650, 127 S. E. 490; 18 C. J. 754-7, § 381; 8 R. C. L. 1161, § 33.

The remaining assignment of error relates to whether the trial court erred in granting respondent's motion for a directed verdict. A careful examination of the depositions referred to above and the record of the trial court discloses that the testimony is in direct conflict as to whether respondent entered into an agreement with appellant whereby respondent waived the right to a deficiency judgment in the event appellant would not contest the sale of the property described in the trust deed.

The testimony appearing in the deposition of L. S. Anderson, cashier and manager of respondent at the

time of the transaction referred to, may be summarized in two vital answers to questions by his cross-examiner.

"Q. On one of these occasions, though, there was a conversation relating to a foreclosure of the trust deed, wasn't there, when you were alone with Mr. Stotsky? A. Yes. . . . Q. In one moment you are stating positively there was no discussion, and in the next breath you say you have no memory of it. Now, which is correct? A. I will say that as my memory serves me, there was never a discussion involving deficiency between Mr. Stotsky and myself."

Appellant positively testified on direct, in the conversation on the occasion referred to by Anderson, that Anderson said "there would be no deficiency judgment."

Thus, it is manifest that the testimony of these two witnesses above referred to is in direct conflict as to whether or not an agreement was entered into between the parties to this action whereby respondent waived the right to a deficiency judgment. Since the testimony relative to this agreement was conflicting, ordinarily when a jury is sitting it is proper to submit the disputed question of fact to the jury and allow the jury to pass upon the credibility of the witnesses. *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993.

Respondent urges, however, that, in the event both sides request a directed verdict, the matter is for the court to determine, and the submission of questions to the jury is waived. Several proposed instructions were formulated and presented to the court by the parties to this action. It is contended that the requested instructions were tantamount to a request for a directed verdict by both parties. Respondent requested the following instruction:

"You are instructed to render a verdict in favor of the plaintiff and against the defendant for the sum of $6131.36 with interest thereon at 7% per annum from May 8, 1934."

Appellant requested the following instruction:

"You are instructed to bring in a verdict in favor of the defendant Samuel Stotsky."

After appellant had completed his case, respondent moved for a directed verdict, and the court observed:

"Well, I am inclined to hold with you, but I think that I will submit it to the jury on that question of whether that agreement is set forth, then I can correct it if I find I have been wrong necessarily by a motion for judgment notwithstanding the verdict.

"There were two questions raised. One is that it was barred by the statute of limitations. I think the evidence shows that it is, not barred by the statute of limitations. But there might be some question as to whether or not there was an agreement. And, while I am inclined to hold that the evidence doesn't establish or present a question of fact for the jury to determine in that particular, as long as we have the jury here we can get the determination of the jury, and then if I am wrong in having submitted it to the jury I can correct the wrong on a motion for judgment notwithstanding the verdict."

After further consideration, during a noon recess, the trial judge announced that he would direct a verdict in favor of the plaintiff for the amount asked for.

Before the jury was brought in, counsel for appellant objected to the court's ruling on the following grounds:

"First of all, that the plaintiff has not sustained the plaintiff's case affirmatively; and,

"Secondly, that I have offered to draw up an instruction that will present the defense as I have outlined it previously of this defendant, based upon the promise of the bank not to seek a deficiency judgment.

"The answer in the affirmative defense is deemed amended to comply with the evidence that is introduced, so that *there is sufficient evidence here to show a defense that there was an agreement based upon valid consideration to the effect that there would be*

*no action taken for a deficiency after the trust deed
sale, if that trust deed sale were allowed to go through.*

"That, acting upon that, Mr. Stotsky was lulled into
a sense of security; did not take advantage of any of
the rights accorded by law; did not go into court; did
not make arrangements for redemption, or for pay-
ment, that were being negotiated at the time; and that
therefore he was deceived by the bank, and that the
bank, the plaintiff, should be estopped from raising
that action.

"That is the defense that should be submitted to the
jury, Your Honor, and I except to Your Honor's ruling.

*"I feel this, Your Honor, that the matter should be
submitted to the jury,* and that the question should
be argued again after the jury's verdict so that we can
fully present all of the authorities at that time."
(Italics ours.)

Appellant merely, during the course of the trial, sub-
mitted his proposed instructions to the trial court, ac-
cording to the customary practice. At the conclusion
of the case, only respondent moved for a directed ver-
dict.

In the light of the foregoing, respondent contends
that appellant, having requested a directed verdict,
cannot complain, because the submission of the ques-
tion of whether or not there was an agreement to
waive the right to a deficiency judgment was waived.
In support of this contention, respondent cites the
following cases: *Knox v. Fuller,* 23 Wash. 34, 62 Pac.
131; *Easterly v. Mills,* 54 Wash. 356, 103 Pac. 475, 28
L. R. A. (N. S.) 952; *Sevier v. Hopkins,* 101 Wash. 404,
172 Pac. 550; *Peoples Bank & Trust Co. v. Douglas,*
154 Wash. 450, 282 Pac. 838. Upon careful analysis, it
is clear that these cases hold that, when both parties
request a directed verdict and reserve no question of
fact to be submitted to the jury, they admit that the
evidence was free from conflict, and the court may
then take the case from the jury.

In *Peoples Bank & Trust Co. v. Douglas, supra,* we said this court is committed to the following rule:

" 'Although there is authority to the contrary, it is the settled rule in many jurisdictions that where both parties move for a directed verdict at the close of the testimony, and the party whose motion is denied fails thereafter specially to request that certain questions be submitted to the jury, he will be deemed to have waived a jury trial and to have consented to the decision of all questions by the court.' "

See, also, 3 Bancroft, Code Pleading, Practice and Remedies, Ten Year Sup. (1926-1936), 2094, § 1446.

Since appellant specifically requested that the question of the existence of the agreement should be submitted to the jury after the adverse ruling, it was the duty of the trial court to submit this question to the jury, unless the alleged agreement was not supported by a valid consideration or respondent could properly set up the defense of *ultra vires.*

Respondent cites *Heim v. Butin,* 109 Cal. 500, 42 Pac. 138, 50 Am. St. 54, and *Hogan v. Horsfall,* 91 Cal. App. 37, 266 Pac. 1002, in support of the proposition that there was no consideration to support the alleged agreement not to take a deficiency judgment. These cases are distinguishable on their facts from the case at bar.

In *Mentzer v. Abbott,* 20 Wash. 708, 54 Pac. 762, we upheld an agreement for a foreclosure providing for no deficiency in which the parties had acted thereon.

"By agreement of the parties, a foreclosure may amount to a full satisfaction of the mortgage debt, without regard to the value of the property. . . . The agreement to give up without contest all the land covered by the mortgage in satisfaction of the debt was a good and sufficient consideration for the agreement to release the mortgagor from personal liability." 2 Jones on Mortgages (8th ed.), 692, § 1214.

To this effect, see, also, *Harras v. Harras,* 60 Wash. 258, 110 Pac. 1085, and 13 C. J. 342-344, § 193.

In *Bechtel v. Baglieto,* 13 Cal. App. (2d) 495, 57 P. (2d) 192, an action was brought to collect a deficiency following the sale of certain property under a deed of trust. The trustor relied upon the bank's promise to refinance after foreclosure and made no further effort to finance the property or to protect herself against a deficiency under the sale. While it is true defendant there changed her position more perhaps than in the instant case by reason of an assignment of rents, still in principle the situation presented is essentially the same, and the language employed therein is peculiarly applicable to this case. The court said:

"We are satisfied that the above testimony, if believed by the jury, would have been sufficient to support the conclusion that defendant, relying upon the promises and statements of the bank officer, was lulled into a sense of security, and consequently failed to avail herself of all the possible means of saving her property both from the foreclosure by Gardner in violation of his contract and from that by the bank. The trial court, however, was of the opinion that the facts were not such as to constitute grounds for relief, and directed a verdict in favor of the plaintiff for the amount of its claim. From the judgment entered thereon the defendant has appealed."

The court concluded that, if the above facts were true, the question was one for the jury.

In *Fite v. Thweatt,* 46 Ga. App. 82, 166 S. E. 682, the court of appeals of Georgia upheld an agreement providing for waiving a deficiency judgment on two notes if defendant would not interfere with the sale of certain property given to secure the notes.

In *Jones v. Wilson,* 104 N. C. 9, 10 S. E. 79, it was held that, where a mortgagor, in a deed of trust, refrained from bidding at a sale on the promise of the mortgagee that, if they bought in the property for less

than the debt, they would cancel certain notes, such promise was based upon adequate consideration.

Forbearance of asserting a legal right constitutes a valid consideration. *Galena Nat. Bank v. Ripley,* 55 Wash. 615, 104 Pac. 807, 26 L. R. A. (N. S.) 993; *Snohomish River Boom Co. v. Great Northern R. Co.,* 57 Wash. 693, 107 Pac. 848; *McHugh v. Rosaia,* 184 Wash. 463, 51 P. (2d) 616.

Here, the testimony of appellant indicated the value of the property described in the trust deed was substantially in excess of the amount of the indebtedness; that appellant could have refinanced the properties with the proceeds received from a fire insurance policy; and that he stayed away from the sale relying on the agreement of respondent to waive the right to a deficiency judgment. We conclude that appellant's forbearing from appearing at and contesting the sale, and his decision not to attempt to refinance the sale by reason of the bank's promise of no deficiency, constituted sufficient consideration to support the alleged agreement.

Conceding that the agreement, if established, is valid, we now consider whether or not respondent may set up the defense of *ultra vires.* Anderson testified that he was manager and cashier at the time he called upon appellant relative to the sale of the property described in the trust deed. As an executive officer of the bank, he is presumed to have acted within the scope of his authority until a showing is made to the contrary. *First Nat. Bank of Kennewick v. Conway,* 87 Wash. 506, 151 Pac. 1129.

In *American Surety Co. v. Philippine Nat. Bank,* 245 N. Y. 116, 156 N. E. 634, the New York court of appeals observed:

"However, resolutions of boards of directors for daily transactions in large banking houses are not usual or

expected. Officers conduct the business of making loans and procuring payments without direct authority for every transaction. Besides, the bank having received the money as the result of this promise made to the plaintiff, cannot deny the authority of its officers in the matter. They are presumed to have acted with authority until the contrary appears [Citing cases]."

See, also, *Mays v. Board of County Commissioners of Creek County*, 164 Okla. 231, 23 P. (2d) 664; and 3 R. C. L. 437.

Besides, the bank, having accepted and retained the benefits flowing from the sale of the property described in the trust deed, if in fact the alleged agreement was made by one of its officers, is estopped to set up the defense of *ultra vires*.

"The mere fact that a person who borrows money from a customer of the bank is a bank officer clearly does not make the bank liable therefor. The situation is completely changed where the bank obtains the benefit of the action of its officer, no matter how illegal such action may have been. The benefit received concludes the matter regardless of authority. It would be inequitable to allow a bank to repudiate the act of its officer but to retain the fruits which have accrued to it by reason thereof." 5 Zollmann, Banks and Banking (Perm. ed.), 48, § 3035.

Since the contract to waive the deficiency judgment, if found by the jury to have been made, was supported by a valid consideration, and since respondent is precluded from interposing the defense of *ultra vires*, the lower court should have submitted to the jury the question as to whether or not such an agreement was, in fact, entered into by the parties.

The judgment of the trial court is therefore reversed and a new trial ordered.

STEINERT, C. J., MAIN, GERAGHTY, and SIMPSON, JJ., concur.